James McAlpin, Administrator, etc., Respondent, *v.* Rebecca B. Powell, Appellant.

The duty of keeping in repair fire-escapes attached to a tenement-house, imposed by the charter of the city of Brooklyn of 1863 (§ 36, title 12, chap. 863, Laws of 1863), is devolved upon the owner; and in the absence of a special agreement between him and a tenant occupying a room in the building, to the window of which a fire-escape is attached, as between the landlord and tenant, it is the duty of the former to keep it in repair. It is not within the range of ordinary repairs which a tenant, in the absence of an agreement to the contrary, is required to make.

The owner, however, owes no duty in such case to the tenant or his family to keep the platform of the fire-escape communicating with the window in such repair that it may be used as a balcony; and when it bears no indication that it was designed to be so used, and is not so guarded as to make it safe for young children, if a child, without license or permission from the owner, passes out of the window upon the platform and is injured in consequence of its being out of repair, the owner is not liable.

Such a case does not come within the rule requiring a party to protect a structure on his own premises which is dangerous to others.

(*Lynch* v. *Nordin,* 1 Ad. & El. [N. S.], 29; *R. R. Co.* v. *Stout,* 17 Wal., 657; *Keefe* v. *Milwaukee,* 21 Minn. 209), distinguished.

(Argued May 28, 1877; decided June 12, 1877.)

Appeal from judgment of the General Term of the City Court of Brooklyn, affirming a judgment in favor of plaintiff entered upon a verdict, and affirming an order denying a motion for a new trial.

This action was brought to recover damages for the death of John McAlpin, plaintiff's intestate, alleged to have been caused by defendant's negligence.

Defendant was the owner of a tenement-house in the city of Brooklyn, the upper story of which was rented and occupied by plaintiff, who was the father of the deceased, with his family. Plaintiff used a small room, the window of which opened upon a fire-escape, as a workshop, where he carried on his trade as shoemaker. The platform of the fire-escape was about six feet long and three and a half feet wide. Around the platform was a railing about three and a half

feet high. In the platform at one end was a trap door which, when opened, gave access to the ladder below. The trap door was made originally so as to turn upward on hinges. The hinges, however, had rusted away, and the trap was held in its place by a piece of wire and a string. The floor of the platform was composed of slats, with openings between. The platform was fifteen or sixteen inches below the window-sill, which was about the same height above the floor of the room. The deceased was a bright and intelligent lad, in his tenth year. At the time of the accident plaintiff was absent. Donovan, a workman, was at work in the room, the window being open. The boy, when last seen by him, was sitting on the window-sill, with his feet resting on the floor or platform of the fire-escape. Donovan, hearing a scream, looked out of the window and saw that the trap door was open; that the boy had fallen through and was killed. It appeared that he had stepped out upon the platform, and on the trap door, which had given way beneath him. The fire-escape was not intended to be used and was not used as a balcony, and it appeared that children were not accustomed to go there.

At the close of the plaintiff's evidence, defendant's counsel moved for a nonsuit on the ground that plaintiff had failed to show negligence on the part of defendant; that if any negligence appeared it was on the part of plaintiff, or the deceased. A motion was also made on the same grounds to dismiss the complaint at the close of all the evidence; which motions were denied, and defendant's counsel duly excepted.

Further facts appear in the opinion.

*John E. Parsons*, for the appellant. Defendant was not bound to keep the fire escape in repair. (*Doupe* v. *Genin*, 45 N. Y., 119; *Witty* v. *Matthews*, 52 id., 512; *Suydam* v. *Jackson*, 54 id., 450; *Jaffe* v. *Harteau*, 56 id., 398; *Post* v. *Vetter*, 2 E. D. S., 248; *Corey* v. *Mann*, 14 How. Pr., 163; *Gott* v. *Gandy*, 2 El. & B., 847.) Plaintiff, as tenant, was bound to keep the premises in repair. (*O'Brien* v. *Caswell*,

59 N. Y., 497; *Kastor* v. *Newhouse,* 4 E. D. S., 20; *Howard* v. *Doolittle,* 3 Duer, 464; *Southcote* v. *Stanley,* 1 H. & N., 247.) If the fire escape was not included in the premises hired by the father, the deceased was a trespasser. (*Dougan* v. *Champ. Tr. Co.,* 56 N. Y., 1; *Victory* v. *Baker,* Ct. Apps., 1876; *Abbott* v. *Macfie,* 33 L. J. [Ex.], 177; *Managan* v. *Aterton,* L. R. [1 Ex.], 239; *Nicholson* v. *Erie R. Co.,* 41 N Y., 525; *Roulston* v. *Clark,* 3 E. D. S., 366; *Hardcastle* v. *So. Y. R. R. Co.,* 4 H. & N., 67; *Hounsell* v. *Smith,* 29 L. J. C. T., 203; *Dott* v. *Wilkes,* 3 B. & Ald., 304.) Deceased being a trespasser, defendant is not liable for his death. (Whart. on Neg., § 505; *Kohn* v. *Lovett,* 44 Ga., 251; *Murray* v. *McLean,* 57 Ill., 378; *Hargrave* v. *Deacon,* 25 Mich., 6; *Gillis* v. *Penn. R. Co.,* 59 Penn. St., 129; *Gautrel* v. *Egerton,* L. R., [2 C. P.], 371; *Zoebisch* v. *Tarbell,* 10 Al., 385; *Sweeney* v. *O. C. & N. R. R. Co.,* id. 368; *Coe* v. *Platt,* 5 L. & Eq., 491; 11 id., 556; *Lygo* v. *Newbold,* 24 id., 507; *Stone* v. *Jackson,* 32 id., 349; *Wilkinson* v. *Farrie,* 1 H. & C., 633).

*Nathaniel C. Moak,* for the respondent. The deceased was not a trespasser. (*Mallany* v. *Spence,* 15 Abb. [N. S.], 319, 323, 327; *Totten* v. *Phipps,* 52 N. Y., 354; *Jendermaur* v. *Dames,* L. R. [2 C. P.], 312; *Hulbert* v. *N. Y. C. R. R. Co.,* 40 N. Y., 145.) Defendant was liable for the injury sustained. (*Barnes* v. *Barnes,* 9 C. B., 392; *Wright* v. *Saunders,* 36 How. Pr., 136; *Peck* v. *Carter,* 6 Hun., 604; *Stack* v. *Portsmouth,* 52 N. H., 221; *Birge* v. *Gardner,* 19 Com., 507; *City of Chicago* v. *Mayor, etc.,* 18 Ill., 360; *Keefe* v. *Mil., etc.,* 21 Minn., 209, 212; *R. R. Co.* v. *Stoute,* 17 Wal., 657.) Defendant was bound to keep the fire escape in a proper and safe condition, as to persons occupying and using the house. (Whart. on Neg., §§ 24, 784, 786; *Cordell* v. *N. Y. C. R. R. Co.,* 64 N. Y., 538; *Vyse* v. *Wakefield,* 6 M. & W., 452; *Hayden* v. *Bradley,* 6 Gray, 425; *McCarty* v. *Syracuse,* 46 N. Y., 194; *Swords* v. *Edgar,* 59 id., 38–39.) A failure to do this was negligence, *per se.* (46

N. Y., 194.)   The deceased had a right to suppose the fire escape was safe and in good repair.   (59 N. Y., 28–39; *Massoth* v. *Del.*, etc., 64 id., 532;  *McGrath* v. *N. Y. C. etc.*, 63 id., 530.)

MILLER, J.   The owner of the premises where the accident happened, which caused the death of the intestate, was under a legal obligation to provide a fire-escape for the benefit of the occupants, and to keep the same in good repair.   (S. L. of 1873, chap. 863, § 36, page 1354.)   While a failure to comply with the statute rendered the owner liable for the penalty prescribed, in the absence of any express agreement to that effect, certainly it is by no means clear that this statutory duty could be imposed upon the tenant.   It is true that ordinarily, unless there is an agreement to repair on the part of the landlord, premises are hired in the condition in which they are at the time of the demise, and the rent is supposed to be arranged with reference to such condition. In such cases the landlord is under no obligation to repair, and the lessee, if he wishes any repairs, must make them at his own expense.   (*Witty* v. *Matthews*, 52 N. Y., 512.) The reparation of a fire-escape would scarcely seem to come within the range of ordinary repairs of a building.   It is an attachment to a certain class of tenant houses which are enumerated in the statute, which is erected especially for the protection of the occupants, and a duty is imposed upon the landlord and owner having in view that object.   Even if such a duty might be assumed by another, under an express agreement, it is not apparent that it could be considered as constituting a part of the obligations of a tenant, who hired without any special agreement, as to repairs.   It would be extremely difficult to define the limits of such a duty, unless it devolved upon the owner in a tenement house occupied by a number of persons.   If one or more who demised one story should be required to take care of the portion there, and the others the remainder, it would be embarrassing to arrange for the whole so as to insure safety and protection to

all the occupants.   The law cited clearly . was not intended
thus to divide among several the performance of the obliga-
tion imposed.   It was aimed at the owners.   They were to
erect and keep in repair, and the penalties provided could not
well be inflicted upon a party not named in the act.   Such
being the purpose and design of the law, at least in the
absence of any special agreement to the contrary, it must be
assumed that defendant was obligated to take care of and keep
in repair the fire-escape where the accident occurred.

Assuming that such obligation devolved upon the defend-
ant, the question arises whether he occupied such a relation-
ship to the deceased as created a liability to respond in dam-
ages for the accident which caused his death. 'To maintain an
action for personal injury occasioned by the negligence or
want of care of another, it must be made to appear that the
defendant owed some duty or obligation to the party injured,
which he failed to discharge or perform.   Unless there is
some contract, duty or service which a party is bound to
fulfil, there can be no negligence, fault or breach of the obli-
gation.   The reported cases, where parties are charged for
injuries to another occasioned by accident, have been decided
upon the principle that there was negligence in doing or
omitting to do some act by which a duty or obligation which
the law imposed has been disregarded.   The real point to be
determined, then, is whether the defendant owed any duty
to the deceased.   If he was a trespasser when he entered
upon the fire-escape, he occupied the position of one who
comes upon the premises of another without right, and who
can maintain no action if he is injured by an obstruction, or
falls into an excavation which has been left open and uncov-
ered.   Even a license is not a protection, unless some induce-
ment or enticement is held out by the owner or occupant,
and no recovery can be had for injuries sustained.   The
deceased was a bright, intelligent boy, nearly ten years of
age, living with his father, who, with his family, occupied
the upper story of the defendant's tenement house, and used
the room, the window of which opened on the fire-escape,

for working at his trade as a shoemaker. The boy, immediately previous to the accident, sat on the window-sill, which was fifteen or sixteen inches from the floor, the window being open and about the same distance from the platform of the fire-escape. A workman engaged at his work was in the room at the time, but did not notice what took place. The deceased must have stepped on the platform of the fire-escape, which was about eight feet in length and three and one-half wide, and had an iron railing around the outside portion of it, and then have passed to the end where there was a trap door and a ladder leading to the platform in the next story below. The hinges of the trap door, which were rusted and only fastened with a small wire and a string, gave way, and he was precipitated below and killed.

The deceased clearly had no right to go upon the platform, and was there for no legitimate purpose. It was not intended for any such use, and the act of the deceased in entering upon and passing along the platform, was in violation of the purpose for which it was designed. It was put up only for a fire escape, to be used for the protection of life in case of danger from fires, and was not intended, and was never used as a balcony. The proof showed that children were not accustomed to go there, and it was only accessible by passing out of the window. Nor does it appear from the evidence, although it was protected in part by an iron railing, that it was intended to be guarded in a manner sufficient to prevent accident to very young children arising from such an exposed position. It bore no indication that it was designed for general use, and furnished no invitation or attraction to young children any more than the roof of a stoop or piazza, which projects under the window of a dwelling-house, and is easy of access to persons in the vicinity. Under such a state of facts, and where a person thus voluntarily exposes himself to danger and is injured, there is no rule of law which authorizes a recovery. The books are full of cases bearing upon the subject, and although the decisions are not entirely harmonious, there is no adjudication which holds that under

circumstances like these an action will lie, while there are many in a contrary direction. (*Dougan* v. *Champlain Trans. Co.*, 56 N. Y., 1; *Victory* v. *Baker*, 67 N. Y., 366; *Abbott* v. *Macfie*, 33 L. J., 177; *Mangan* v. *Atterton*, L. R. 1 Ex., 239.)

In *Abbott* v. *Macfie* (*supra*), the defendant placed the shutter of a window against the wall of a public street. The dress of a child, who was playing in the street, jumping off the shutter, caught in the same, and it fell, and injured the child, and it was held that the defendant was not liable. The child was lawfully in the street in the case cited, and hence might very naturally be attracted to the shutter which was there, while in the case at bar, the deceased was obliged to go beyond the room in which he was to reach the fire escape, and overcome obstacles in the way of getting there. The decision cited establishes a stronger case against the defendant than the case at bar. In *Mangan* v. *Atterton* (*supra*), the defendant exposed a machine which was dangerous when in motion. A boy, four years' old, by direction of his brother, seven years of age, placed his fingers within the machine, which were crushed, and it was held that the defendant was not liable.

Although the rule in regard to liability for the negligence of children is not as stringent in England as in this State, yet within the principle decided in the last two cases it is difficult to see how a liability can be incurred where the defendant has done nothing to produce the injury, and where there is an unauthorized interference with or invasion of his rights. It is true that some of the decisions are seemingly in conflict with those referred to, and cases may be found where a different doctrine seems to be upheld, as in *Lynch* v. *Nordin* (1 Ad. & Ellis [N. S.], 29), where an infant entered into a cart standing in the street and was injured, the owner was held liable. But there is a clear distinction between such a case, where the infant was lawfully in the highway, which it has the right to travel and use, and where the blameable carelessness of the defendant tempted the child to amuse himself with an empty cart and a deserted horse, and

a case where he is palpably invading the premises of another and is a mere trespasser. In the latter case a party is without the protection of the law except in special cases. The owner of land may dig an excavation in his own premises, not substantially adjoining a public highway, and no action lies against him by one who has strayed off the highway and fallen into the excavation. (*Hardcastle* v. *S. Y. R. R. Co.*, 4 Hurlst. & Nor., 67; *Hounsel* v. *Smith*, 29 L. J. [C. P.], 203; *Ilott* v. *Wilkes*, 3 Barn. & Ald., 304; *Nicholson* v. *Erie Railway Co.*, 41 N. Y., 525.) But a different rule prevails when the pit dug is so near the highway that a person in using the same with ordinary caution may fall in. See *Beck* v. *Carter* (68 N. Y., 283), where the authorities are reviewed.

The reason of the rule in the latter case is, that a person lawfully using the highway in a reasonable manner is liable to fall in the pit, and where such is the case, a duty is imposed upon the owner to protect the excavation. The deceased was not on the platform by the defendant's invitation, nor did he come near there, as in the case of an excavation near the highway, while in the lawful use of his father's premises. He had stepped over the bounds and passed the limits to which he was restricted by the demise to his father, and therefore his case does not come within the rule which requires a party to protect a structure upon his own premises which is dangerous to others. (*Gautret* v. *Egerton*, L. R. [2 C. P.], 371; *Coe* v. *Platt*, 5 Eng. L. & Eq., 491; 11 id., 551; *Lygo* v. *Newbold*, 24 Eng. L. & Eq., 507; *Stone* v. *Jackson*, 32 Eng. L. & Eq., 349; *Wilkinson* v. *Fairrie*, 1 Hurlst. & Colt., 633.)

The deceased had not even a license or permission, express or implied, to pass upon the fire-escape. Nor do we think that an inducement was held out which might have led him or others to believe that it was intended to be used by persons occupying the building, or that it can be claimed that the defendant directly or by implication invited him to enter and thus assumed the obligation towards him that it was in a safe condition, or owed him any duty. The learned

counsel for the plaintiff insists that the owner of machinery or other property, which by being trifled with by children results in injury to them, is liable if he negligently leave it open upon his own land or premises where children, by interfering therewith, may be injured, and we are referred to some cases which are supposed to maintain this doctrine. A leading case in which this rule is upheld is that of the *Railroad Co.* v. *Stout* (17 Wall., 657). A child strayed on the company's grounds and was injured by a turn-table being moved by other children, and it was held that while as a general rule in regard to an adult, that to entitle him to recover damages for an injury resulting from the fault or negligence of another, he must himself have been free from fault, such is not the rule to an infant of tender years. That the care and caution required of a child is according to its maturity and capacity only, and this is to be determined in each case by the circumstances of that case, and that while the infant here was clearly a trespasser and had no right on the premises of the railroad company, the defendant in the record disclaimed resting his case on the ground of plaintiff's negligence; that disclaimer ought to dispose of the question of plaintiff's negligence, whether made in a direct form or indirectly, under the allegation that the plaintiff was a trespasser upon the railroad premises, and could not recover. The question therefore as to the negligence of the child was not in the case, and although the opinion discusses the authorities which bear upon that subject, an examination of them was not required for the decision of the same. This case is followed by *Keefe* v. *Milwaukee* (21 Minn., 209), which refers to the case last cited, and holds under a state of facts very similar, that the child was led into the commission of the trespass by the defendant himself, and thus occupies a position different from an ordinary trespasser, and under such circumstances the defendant owed it a duty which it did not owe to ordinary trespassers and was liable. The decision is put upon the ground that the child was attracted by the turntable, and induced to go there by the conduct of the defendant.

We are not now called to express an opinion as to the soundness of these decisions in such a case; and, while we are not prepared to uphold them, it is enough to say that the facts are by no means analogous. A child is permitted to go into the public streets, which are open to persons of all ages, without being chargeable with negligence, and being there, if led by attractions into danger, even although it may be that, under some circumstances, an action would lie for injuries sustained thereby, such a case has no similarity to one where the child is left without any one to take especial charge of him, and escapes through an open, unguarded window to a place of danger, and sustains an injury without any allurements being held out to him. A wide distinction exists between the two cases, and while the one at bar is on the border line, and the point of difference is perhaps very close, this distinction is fully recognized in the best considered adjudications in the courts, and is the turning point upon which cases of this character are to be determined. No case has ever held that the owner of a building rented to a tenant, without a covenant that the landlord shall keep the same in repair, is responsible for damages occasioned by neglect to repair, and although, as we have seen, this case, as there was a statutory liability, may perhaps be excepted from this general rule, it would be going very far to hold that, under circumstances like these, the defendant was liable.

There is another view of the case which was not presented on the argument, but which should not be overlooked. If there was any liability for negligence, this obligation was in part created by a failure to protect the infant children of the tenants from injury, by restraining them from getting on the fire-escape. As to adults, it is to be supposed that their own judgment and discretion would answer that purpose. As to those of immature years, if the window had been temporarily protected, as is quite usual when young children are liable to be exposed to danger, the accident would not have occurred. A temporary gate or bars would have effected that object. The owner clearly was not called upon to pro-

vide this protection. Ordinarily, the tenant provides such protection for the safety of the members of his family who may require it. But, without considering whether there was negligence of the tenant in this respect, which exempted the defendant from liability, it is entirely apparent, for the reasons already stated, that the action cannot be maintained.

There was error in the trial in denying the motion for a nonsuit, and the judgment of the General Term affirming the judgment of nonsuit must be reversed and a new trial granted, with costs to abide the event.

All concur, except, CHURCH, Ch. J., dissenting; RAPALLO, J., absent.

Judgment reversed.