PEREZ *v.* THE AMERICAN RAILROAD COMPANY OF PORTO RICO.

APPEAL from the District Court of San Juan.

No. 56.—Decided June 24, 1905.

CONSOLIDATION OF ACTIONS.—In the complaint filed in this case $10,000 damages are prayed for, and also that the defendant be required to fence a certain portion of its tracks, to put up bars and gates at crossings, and other similar matters. The court *held:* That these two causes of action cannot be joined in the same complaint, and that the one having reference to the fencing of the railroad track, etc, must be presented by means of an application for mandamus.

APPEAL—POWERS OF APPELATE COURT.—An appeal is taken from the judgment rendered by the inferior court, and when the case is submitted to the Supreme Court it may review the same in all its parts and consider all the merits of the same under the different aspects presented.

DAMAGES AND LOSSES—RIGHTS AND OBLIGATIONS OF RAILROAD COMPANIES AND OF TRAVELERS IN GENERAL.—As all railroad trains are necessarily confined to their tracks, persons traveling on foot are under obligations to leave the track free and take necessary precautions for their own preservation.

TRESPASSERS.—Any person who, without permission, travels on the track of a railroad or crosses the same at a private crossing, is a trespasser and cannot

demand of the employes of the company greater care than that which is necessary to avoid voluntary damage or the consequences of carelessness or negligence.

ID.—A person, who, without permission (trespasser) travels along the track of a railroad company must take extra precaution for his own safety, and if an accident occurs neither the injured person nor his heirs, in case of his death, can hold the company responsible for the consequences of such accident, unless there be shown on the part of the employes thereof carelessness, absolute negligence, or a wilful disregard of the danger to which the person was exposed.

ID.—EXCLUSIVE RIGHTS OF THE COMPANY AND OF THE OWNERS OF THE LAND.— The company and the owner of the land are the only ones who have a right to make use of the track of a railroad company, except at such places as the railroad tracks cross a public highway.

ID.—CASES IN WHICH THE COMPANY MIGHT BE LIABLE.—The fact that a person travels along the tracks of a railroad company without permission does not constitute a defense for the company where it was at fault, because if such person, without being negligent, should suffer any damage and the employes of the company should not have exercised due care and diligence, he would have a right to be indemnified for any injuries which he might suffer.

ID.—Where an intoxicated person lies upon the tracks of a railroad, he is a trespasser, and as he is guilty of contributory negligence, he cannot claim indemnity for damages if a train should pass and cause him injury, unless it could be shown that the employes of the company, after having seen him, failed to exercise due care in order to avoid the accident.

ID.—Unless due care and diligence are exercised, in order to avoid causing damage to a person who voluntarily or otherwise lies upon the track and who is discovered in time, the injured party may recover damages.

DAMAGE TO PASSENGERS.—The responsibility of companies with respect to the safety of passengers which they may carry is very great, and the law presumes negligence on the part of the company when a passenger is injured without any fault of his own.

ID.—RIGHT TO INDEMNITY BY REASON OF NEGLIGENCE OR FAULT OF COMPANY.—In order that the negligence of a railroad company, or the failure thereof to comply with any duty imposed upon it by law, may serve as a basis for an action to recover damages in case of an accident, it is necessary that there should be some evidence tending to show that such negligence or noncompliance with duty had contributed, to some extent at least, to cause the damages which serve as a basis for the claim.

The facts are stated in the opinion.

*Mr. Suliveres* for appellant.

*Mr. Eduardo Acuña* for respondent.

Mr. JUSTICE MacLEARY delivered the opinion of the court.

This is an action for injuries resulting in death. On the morning of the 28th of September, 1903, a train belonging to the American Railroad Company was running from San

Juan to Camuy and when it reached a point near the stone which marks the 75th kilometer from the capital it ran over a man, who was upon the track, and killed him almost instantly. The deceased proved to be Julian Perez, a natural son of the plaintiff herein, who had been recognized by his father and lived with him at Arecibo, and was engaged in the occupation of a cigarmaker. Deceased was a man of about 43 years of age, in rather delicate health, a bachelor, and was accustomed to earn, when working at his trade, $1.25 to $1.50 per day. He could read and write, and sometimes kept the accounts of his father's little business and made the returns required by the the Internal Revenue Laws. It is claimed by the defendant that he was an idiot and a vagabond, but the evidence on this point is vigorously contradicted, and it must be considered as proven that, although he was somewhat eccentric and when under the influence of liquor inclined to be clownish, he was of sound mind. He was very deaf, which, with his peculiar habits, probably induced the report that he was idiotic.

On the day of the fatal accident he had left his home in Arecibo, on foot, with some clothes in a bundle suspended from a stick which he carried over his shoulder, with the purpose of going to Garrochales to purchase leaf-tobacco, and to spend a few days on a visit to some friends for the recuperation of his health. The road to Garrochales along which he was traveling, at the 75th kilometer stone, runs parallel with the railroad track which along this portion is unfenced. At a distance of about 80 meters west from the residence of J. A. Ramos, in this vicinity, a private road leads from the public highway across the railroad track to a pond on the land of Ramos used by the proprietor and his tenants for the watering of stock. This private road is about six meters wide and crosses the railroad track at grade. The crossing is about five or six meters distant from the public road along which deceased had been walking just prior to the collision which caused his death. There was no gate or

bar of any kind at this grade crossing, though perhaps there had been some eight years previous to the accident.

The deceased turned off from the public highway and started along this private road across the railroad track, for what purpose does not appear in the record. While he was on the track the railway train approached from the east and struck him, with fatal results, as above stated. The evidence, though in this respect a little conflicting, warrants the assumption that the train was running when it came in sight of the crossing at the rate of 32 kilometers per hour, which was the usual rate of speed. The railroad track at this point, as is shown by the map produced in evidence, curves slightly toward the east, but not sufficiently to seriously obstruct the view of approaching trains. The theory of suicide is advanced by the railroad company to account for the rashness of the deceased in placing himself before the approaching train, but no evidence is found in the record to warrant such conclusion.

It also appears from the evidence that the private road on the crossing of which the accident occurred was on the land belonging to a neighboring farmer and was used only by the proprietor, his tenants and such other persons as might be licensed so to do by him. It does not appear that the deceased had any permission to use this road; on the contrary Ramos, the owner, testified that no such permission had been given.

It appears also that the man was first seen upon the track by the engine-driver and fireman, when the train was at a distance of 40 meters from the crossing; that the whistle was blown repeatedly and the speed reduced in order to avoid the collision, the brakes being applied for that purpose. Notwithstanding all these precautions the man was struck and killed.

This action was brought on the 21st of February, 1904, for damages in the sum of $10,000. It is also sought in this same suit to compel the defendant railroad company to fence

its track from the capital to Camuy, and to place bars and
·gates at all grade crossings along this section of the road, and
to maintain guards at each of them, and to close up the cross-
ing where the accident occurred, and to pay all costs of suit.

These two causes of action cannot be joined. The relief
sought in the fencing, etc., of the track must be found in a
mandamus suit brought in accordance with the statute. For
the law governing such proceedings see Laws of 1903, pages
113 to 116. The Code of Civil Procedure, in section 104, de-
clares what causes of action may be joined and, although it
was not in force when this action was brought, it sets forth
the general principles of law on the point referred to which
governed on said date; and it was in force when the trial was
had and the judgment rendered.

On the 20th of September, 1904, the district court passed
judgment in favor of the plaintiff for $500; but entirely
ignoring his prayer for the fencing of the railroad, and so
forth. In view of the law as it is here understood, we think
the court was justified in ignoring this part of the plaintiff's
complaint and in treating this case as one for the recovery
of damages for injuries resulting in death.

In taking this appeal, counsel for the plaintiff attempts
to limit it to the action of the court below in allowing him
only $500, so that this court shall not inquire into this cause
of action but only into the amount of damages awarded; in
other words, so to shape this appeal that this court shall
either affirm the judgment or increase the amount of his dam-
ages recovered. This cannot be done. An appeal when it is
taken is against the judgment rendered by the trial court.
(Code of Civil Procedure, sec. 294.) And when the matter
is brought to this court it may be here reviewed in all its
parts, and this court is authorized to consider all the merits
of the case, so as to promote justice and right and to prevent
injustice and delay. (Laws of 1903, p. 59.) Then we must
consider that this appeal brings the whole case before us for

consideration in all its aspects according to the law applicable to the facts herein presented.

In the first place, what position did the deceased occupy in reference to the defendant, the railroad company, and what were the rights and obligations existing between them? Had the crossing been a public highway, and the deceased been traveling along the road in a lawful manner, the rights of the traveler and the railroad company would have been reciprocal and equal; but, inasmuch as the railroad train is necessarily confined to its tracks and a pedestrian can govern his movements in such a way as to avoid a collision more readily than the engineer can adjust his train to a like purpose, the obligation is imposed on the pedestrian to give the road and take reasonable precautions for his own safety. *Morrisey* v. *Eastern R. R. Co.*, 126 Mass., 377; 30 Am. Rep., 687.) But when a pedestrian is walking a railroad track, or crossing the same at a private crossing, without permission from the owner of the land or of the railroad company, he is a trespasser, and is only entitled to such care on the part of the employes of the railroad company as will avoid recklessness and prevent the wanton infliction of an injury. A trespasser upon a railroad must take extraordinary precautions for his own safety, and, unless recklessness or gross carelessness or wanton disregard of his peril is shown to have been indulged in by the employes of the railroad company, neither the injured person, nor his heirs, if death ensues, can hold the railroad company responsible for damages caused by a collision. (*Ill. Cent. R. R. Co.* v. *Godfrey*, 71 Ill., 500; 22 Am. Rep., 114; *Severy* v. *Nickerson*, 120 Mass., 306; 21 Am. Rep., 514; *St. L. V. & T. H. R. R. Co.* v. *Bell*, 81 Ill., 76; 25 Am. Rep., 269; *McAlpin* v. *Powell*, 70 N. Y., 126; 26 Am. Rep., 555; *Gramlich* v. *Wurst*, 86 Penn. St., 74; 27 Am. Rep., 684.)

The case under consideration bears a striking resemblance to a New York case, from which a short extract will be made. In that case the plaintiff intestate was run over and killed

by the defendants' cars while he was crossing their premises, not on a public crossing, but where persons had been accustomed to cross without objection.

It was held that no action could be maintained. The Court of Appeals of New York, speaking in an able opinion through Mr. Justice E. Darwin Smith, said:

"No relation existed between the defendant and Nicholson to create any particular duty, such as exists between a master and servant, or employer and his employe. The complaint alleged that the said James Nicholson was traveling upon a public highway and lawfully crossing the defendant's track. If the fact had been so the defendant and Nicholson would have stood upon common ground, and could have had equal rights in such highway, and the defendant would have owed to him a clear legal duty; but the case seems to me to be without the first element to create a legal duty on the part of the defendants to set or secure their cars in respect to the rights of said Nicholson. He was not in their employ. He was not in the employ of the iron company. He had no lawful business at the time on their track; no legal right to use or cross it, and would have been simply excused from liability as a trespasser on the naked ground of a license, implied from previous use without objection." *Nicholson* v. *Erie Ry. Co.*, 41 N. Y., 525. Also reported in 30 American Reports, p. 687, in note.)

While the plaintiff, at the time of the accident, was a mere intruder and trespasser upon the railroad track, and no inducement or implied invitation or permission to him to enter upon it has been held out, and he was neither a passenger nor on his way to become one, but was there merely for his own purposes, and was using the track for his own benefit, the railroad company owes him no duty except the negative one that its employes operating its train shall not maliciously or with gross carelessness or recklessness run over him. (*Jackson* v. *Boston & Maine R. R. Co.*, 125 Mass., 75. Also reported in note found in 30 American Reports, p. 687.)

There seems to be among the common people of this north coast an impression that a railroad track is a public highway,

and that every one has the right to walk upon it, or to ride upon it at his pleasure, and sometimes pedestrians seem to hesitate as to whether they should give the right of way to the engine or not. It is high time that it should be understood in this Island, as it is on the Continent, that the use of a railroad track is reserved to the railroad company and to the owner of the soil, exclusive of the public everywhere except where it is crossed by a public road. This rule is necessary, not only for the protection of property, but for the preservation of human life. The public should be aware that in this Island as elsewhere it is contrary to the law, and a penal offense, to walk upon a railroad track as if it were a common road. And even if it were not so it would be a civil wrong of an aggravated nature, for such habit endangers not only the trespasser himself, but all who are travelling as passengers or employes upon the railroad train.

The railroad company has purchased from the owners of the soil the exclusive right to use the land over which its track is laid, and has paid to the proprietors such sum as was agreed upon, or adjudged in each case for that privilege, and with this right no person has a right in any way to interfere. These concessions to railroad companies are made in consideration of public accommodation and convenience. The right of way of the railroad company is enjoyed by the company to the exclusion of all persons whomsoever, except the owner of the soil. When the right of way is not in use by the company for the passage of its trains or for such use as the company may lawfully make of the same, it is in the possession of the proprietor for his use and occupation, and a person who enters upon a railroad track must do so either by permission or license of the railroad company, or of the proprietor of the soil. When he has neither he is a mere trespasser and is only entitled to such consideration as the law requires to be shown to every human creature, whether he is in the lawful pursuit of his business or not. (*Phil. & Read. R. R. Co.* v. *Hummell*, 44 Penn. St., 375; 84 Am. Dec., 458.)

The principles of law in regard to a trespasser using a railroad track are well set forth in an opinion of the Supreme Court of Illinois. Mr. Justice Sheldon in discussing this question says:

"The right of way was the exclusive property of the company, upon which no unauthorized person had a right to be, for any purpose. The plaintiff was traveling upon defendant's right of way, not for any purpose of business connected with the railroad, but for his own mere convenience as a foot way in reaching his home on return from a search after his cow. There was nothing to exempt him from the character of a wrongdoer and trespasser in so doing, further than the supposed implied assent of the company, arising from their non-interference with a previous like practice by individuals.

"But, because the company did not see fit to enforce its rights, and keep persons off its premises, no right of way over its ground was thereby acquired. It was not bound to protect or provide safe-guards for persons so using its ground for their own convenience. The place was one of danger, and such persons went there at their own risk and enjoyed the supposed implied license subject to its attendant perils. At the most, there was here no more than a mere passive acquiescence in this use. A mere naked license or permission to enter or pass over an estate will not create a duty or impose an obligation on the part of the owner to provide against the danger of accident. (*Sweeney* v. *Old Colony and Newport Ry. Co.*, 10 Allen, 373; *Hickey* v. *Boston & Lowell Ry. C.*, 14 id., 429; *Phil. and Read. R. R. Co.*, v. *Hummell*, 44 Penn. St., 375; *Gills* v. *The Penn. Ry.*, 59 id., 129.)"

(*Illincis Central R. R. Co.* v. *Godfrey*, 22 Am. Rep., 114.)

Nevertheless, it is no defense on the part of a railroad company, which is itself shown to have been at fault, that the plaintiff or the deceased was a trespasser at the time of his injury, if he was guilty of no negligence contributing thereto. His being a trespasser does not deprive him of the protection of the law; and if due care is not used by the defendant in conducting the train which caused the injury, he is entitled to such damages as he suffers.

A drunken man lying on the railroad track is a trespasser

and is guilty of contributory negligence, which will prevent a recovery from an injury caused by a passing train, unless the employes of the company, after discovering him, are wanting in due care to avoid causing him an injury. (*Henning* v. *Wilmington & Raleigh R. R. Co.,* 10 Iredell, 402; 51 Am. Dec., 395.)

And if due care is not used to prevent the injury to one discovered lying on the track, whether voluntary or otherwise, the injured party may recover damages. (See case of *Freer* v. *Cannon,* 55 Am. Dec., and cases cited in note on page 674.)

Such is the general current of authority, though there are cases in which it has been held that there can be no recovery for an injury by a train to a drunken man lying on the track, although the company's servants are guilty of negligence. (*Houston & T. C. R. R. Co.* v. *Sympkins,* 54 Ter., 615; 38 Am. Rep., 632.)

It has also been well said that when a passenger is injured without fault on his part, the law presumes negligence on the part of the carrier, because it was part of the undertaking to carry the passenger safely, and companies are held to the strictest measure of accountability; but in order that they may be enabled to carry safely, the law insists upon a clear track. If, therefore, a man plants himself on the rail, he must not expect the law to do more for him than to punish wanton injury, and if he be injured from the ordinary pursuit of the company's legalized business, let him blame his own rashness and folly. (*L. S. N. R. & C. Co.* v. *Norton,* 64 Am. Dec., 673.)

It is contended by the plaintiff in this case that it was the duty of the railroad company to fence its track and maintain gates and guards at the crossing of the private way. It is unnecessary to decide that point at this time.

Even if this is the case, and even if the regulations regarding such duties of the railroad company are in force, still the failure to comply with the law in this respect did not con-

tribute in any degree to the death of the deceased. Railroad tracks are not fenced for the purpose of keeping out pedestrians; neither are bars and gates erected for that purpose, and it is doubtful if they would have that effect if such were the object. The deceased was neither a child nor a lunatic nor an idiot. A man of mature age, with ordinary sense and common prudence, could not demand that he should be locked out of a dangerous place· to keep him from entering there; but his knowledge of the danger and the instinct of self preservation should be sufficient for that purpose. In order for the negligence or the failure to comply with a legal duty on the part of a railroad company to be a reason for the recovery of damages in a case like this, there must be some evidence that such negligence or failure to comply with such a duty contributed in some degree at least to the injury on which the suit is based. (*Gillespie* v. *McGowen,* 100 Penn. St., 144; 45 Am. Rep., 369; *Gramlich* v. *Wurst,* 86 Penn. St., 74; 27 Am. Rep., 685.) See also note on p. 460 of 84 Am. Dec. and cases there cited.

The facts of this case show that Julian Pérez was unlawfully upon the railroad track at the grade crossing of a private road; that he had neither license nor permission from the owner of the soil, nor from the railroad company to use the private way or the railroad track, and for this reason he must be considered as a mere trespasser only entitled to such protection as the law affords him. That is to say, that the employes of the railroad company must not be guilty of gross carelessness or negligence, or wanton injury, in running defendant's train while approaching the place where he was standing.

It is true that the evidence shows him to have been deaf, but it is not shown that the defendant or its employes knew of this fact, and for this reason he should have used greater care and caution not to be run over by a passing train. If his ears were defective he should have used his other senses the more carefully, and he had ample time to have stepped

off the track after the moment when he was seen by the crew of the approaching train at a point 40 meters or more away.

Furthermore, the engineer had a right to expect that a man standing upon a railroad track in such a situation would step out of the way before the train reached him, as any man of ordinary prudence who cared for the preservation of his life certainly would have done.

Since the accident which caused the death of this pedestrian was the result of his own carelessness and recklessness, and the employes of the company are not shown to have been in any way negligent or to have been lacking in ordinary care and prudence, the plaintiff cannot recover any damages whatever against the railroad company.

The judgment in this case must, therefore, be reversed, and judgment herein rendered in favor of the defendant and against the plaintiff for all costs both in this court and the court below.

*Reversed.*

Chief Justice Quiñones and Justices Hernández and Figueras concurred. Mr. Justice Wolf did not sit at the hearing of this case.