## Pérez v. The American Railroad Company of Porto Rico.

## Apelación procedente de la Corte de Distrito de San Juan.

No. 56.  Resuelto en Junio 24, 1905.

ACUMULACIÓN DE ACCIONES.—En la demanda presentada en este caso se solicita indemnización de daños y perjuicios por $10,000 y que se obligue á la demandada á cercar cierto trozo de vía férrea, poner barras y puertas en los cruces, y otras peticiones semejantes: *resolvió* el Tribunal que estas dos causas de acción no pueden unirse en la misma demanda y que la que se refiere á la cerca de la vía, etc., debe plantearse en un procedimiento de mandamus.

APELACIÓN.—FACULTADES DEL TRIBUNAL DE APELACIÓN.—Una apelación se interpone contra la sentencia dictada por el Tribunal inferior y cuando el caso se somete al Tribunal Supremo, éste puede revisarlo en todas sus partes y considerarlo en todos sus méritos y bajo los distintos aspectos que presente.

DAÑOS Y PERJUICIOS.—DERECHOS Y OBLIGACIONES DE LAS COMPAÑÍAS FERROVIARIAS Y DE LOS TRANSEUNTES EN GENERAL.—Como todo ferrocarril ha de estar necesariamente limitado á su vía, las personas que transiten á pié están en la obligación de dejar el camino franco y tomar las precauciones necesarias para su propia conservación.

TRANSGRESORES (TRESPASSERS).—Una persona que sin permiso alguno transite por la vía de un ferrocarril, ó la atraviese por un cruce particular, es un transgresor (trespasser) y no puede exigir de los empleados de la compañía más cuidado que el necesario para evitar un daño voluntario ó las consecuencias de un descuido ó negligencia.

ID.—Una persona que sin permiso (trespasser) transite por la vía de un ferrocarril debe tomar precauciones extraordinarias para su propia seguridad, y si resultare una colisión, ni la persona perjudicada, ni sus herederos, en caso de muerte, pueden hacer responsable de sus consecuencias á la Compañía, á no ser que se demuestre que por parte de los empleados de ésta ha habido descuido, completa negligencia ó desprecio voluntario del peligro á que dicha persona estaba expuesta.

ID.—En un caso que se cita en la opinión, se expresa que una persona fué cogida y muerta por los carros de un ferrocarril mientras atravesaba la vía del mismo, no por un cruce público, sino por un sitio por donde todo el mundo acostumbraba á pasar sin que nadie hiciera objeción alguna; la Corte de Apelación de New York resolvió que sobre tales hechos no podía establecerse acción alguna.

ID.—DERECHOS EXCLUSIVOS DE LA COMPAÑÍA Y DE LOS PROPIETARIOS DEL TERRENO. La Compañía y el dueño del suelo son los únicos que tienen derecho á hacer uso de la vía de un ferrocarril, á excepción de aquellos sitios en que dicha vía cruza un camino público.

ID.—CASOS EN QUE LA COMPAÑÍA FUERE CULPABLE.—El hecho de que una persona transite por la vía de un ferrocarril sin permiso alguno, no constituye una defensa para la Compañía en los casos en que ésta fuere culpable, pues si dicha

persona sin ser negligente, sufriere algún daño, y los empleados de la compañía no hubieren ejercido el debido cuidado y diligencia, tiene derecho á ser indemnizado por los perjuicios que sufra.

Id.—Una persona que en estado de embriaguez estuviere echada sobre la vía de un ferrocarril es un transgresor (*trespasser*) y como es culpable de negligencia contribuyente no podría reclamar indemnización alguna si pasare algún tren y le causare daño, á no ser que se demuestre que los empleados de la Compañía después de haberlo visto, dejaron de ejercitar el debido cuidado para evitarlo.

Id.—Si no se ejercitare el debido cuidado y diligencia para evitar un daño á una persona que voluntariamente, ó de otro modo, estuviere echada sobre la vía, y que ha sido descubierta á tiempo, la parte perjudicada puede recobrar indemnización.

Id.—DAÑOS Á LOS PASAJEROS.—La responsabilidad de las Compañías con respecto á la seguridad de los pasageros que conducen es muy grave, y la ley presume negligencia por parte de la Compañía cuando un pasagero sufre daños sin falta alguna de su parte.

Id.—DERECHO Á INDEMNIZACIÓN POR LA NEGLIGENCIA Ó CULPABILIDAD DE LA COMPAÑÍA.—Para que la negligencia de una Compañía de ferrocarril, ó el incumplimiento por su parte de algún deber que la ley le imponga, puedan servir de fundamento á una reclamación de daños y perjuicios en caso de accidente, es necesario que haya alguna prueba tendente á demostrar que tal negligencia ó incumplimiento de deber han contribuído en algún grado, al menos á la comisión de los daños que sirvan de base á la reclamación.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Suliveres.*

Abogado del apelado: *Sr. Eduardo Acuña.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

La presente es una demanda establecida para recobrar daños y perjuicios que ocasionaron muerte. En la mañana del 28 de septiembre de 1903, el tren perteneciente á la Compañía Americana de Ferrocarriles corría de San Juan á Camuy, y cuando llegó al punto cerca de la piedra que marca el kilómetro 75, desde la Capital, le pasó por encima á un hombre que estaba en la vía dándole muerte instantáneamente. El interfecto resultó ser Julián Pérez, hijo natural del demandante en esta causa, que había sido reconocido por su padre y vivía con él en Arecibo, encontrándose dedicado al oficio de tabaquero. El interfecto era un hombre de unos 43 años de edad, de constitución algo delicada, soltero, y podía ganar, cuando trabajaba en su oficio, desde dollar y cuar-

to hasta dollar y medio diario. Sabía leer y escribir, y á veces llevaba las cuentas de su padre y hacía los informes que la ley de Rentas Internas exige. Alega el demandado que era un idiota y vagabundo, pero la prueba en este punto, está fuertemente contradicha, y debe darse como cierto, que aunque era algo excéntrico y tonto cuando se encontraba bajo la influencia del licor, era de buen sentido. Era muy sordo, lo que, con sus peculiares hábitos, hicieron circular la noticia de que era idiota.

El día del fatal suceso, había salido á pie de su casa de Arecibo, con un lío de ropa que llevaba suspendido de una varilla, el que cargaba en su hombro, con el objeto de ir á Garrochales á comprar hojas de tabaco, y dedicar varios días á visitar á algunos amigos y á la vez recobrar su salud. El camino para Garrochales, por donde él viajaba, en la piedra que marca el kilómetro 75, es paralelo á la vía del ferrocarril, la que en esta parte está descubierta. A una distancia de unos ochenta metros hacia la parte oeste de la residencia del Sr. J. A. Ramos, vecino de ésta, un camino privado conduce del camino público al otro lado de la línea del ferrocarril, á un estanque que se encuentra en terrenos del Sr. Ramos, cuyo propietario y agregados lo usan para abrevar el ganado. Este camino particular es de unos seis metros de ancho y cruza la vía del ferrocarril á nivel. El cruce se encuentra á unos cinco ó seis metros de distancia del camino público por donde el interfecto había estado paseando justamente antes de la colisión que le ocasionó la muerte. No había puerta ni barra de ninguna clase en este cruce, aunque quizás existió alguna unos ocho años con anterioridad al suceso.

El interfecto abandonó el camino público y siguió por el particular que atraviesa la vía del ferrocarril, con qué fin, no consta en los autos. Mientras se encontraba

él en la vía del tren, éste se acercaba del este y lo cogió con fatales resultados, según se ha expresado. La prueba aunque algo confusa, con respecto á este particular, afirma la suposición de que el tren corría cuando vió el cruce, á razón de treinta y dos kilómetros por hora, que era la velocidad general del mismo. Según se ve por el mapa aducido como prueba, la vía del ferrocarril en este punto, tiene una ligera curva hacia la parte del este, pero no lo bastante para que impida la vista de los trenes que se aproximan. La teoría del suicidio, ha sido presentada por la Compañía del ferrocarril, á fin de que se tenga en cuenta, por la imprudencia del interfecto al colocarse ante el tren que se acercaba, pero no se encuentra en los autos prueba alguna que sostenga tal conclusión.

Aparece también de la prueba, que el camino particular en cuyo cruce ocurrió el accidente, está en terrenos pertenecientes á un agricultor vecino, y era usado solamente por el propietario y sus agregados y todas aquéllas personas que tenían permiso del dueño; no consta tampoco que el interfecto tuviera permiso para usar este camino; por el contrario, el poseedor Ramos, declaró que tal permiso no había sido concedido.

Consta además, que primeramente el maquinista y fogonero, vieron al hombre en la vía cuando el tren se encontraba á una distancia de unos cuarenta metros del cruce, que se le tocó el pito repetidas veces, y se acortó la marcha del tren á fin de evitar el choque, habiéndose hecho uso de los frenos con tal objeto. A pesar de todas estas precauciones, el hombre fué cogido y muerto.

Esta acción fué establecida en 21 de febrero de 1904 por daños y perjuicios en la suma de 10,000 dollars. También se trata en este mismo pleito de obligar á la compañía demandada, á cercar la vía desde la Capital á Camuy y á colocar barras y puertas en todos los cruces

en este trayecto del camino, y á poner vigilantes en cada uno de los mismos, y á cerrar el cruce donde ocurrió el accidente, así como á pagar las costas del procedimiento.

Estas dos causas de acción no pueden ligarse. El remedio solicitado al pedir que se cerque ect. la vía, debe obtenerse por medio de un procedimiento de mandamus, establecido de acuerdo con los estatutos. Con respecto á la ley que rige en tales procedimientos, véanse las leyes de 1903, p. 113, 116. El Código de Enjuiciamiento Civil, en la sección 104, declara que las causas de acción pueden unirse, y aunque no estaba vigente cuando este pleito fué entablado, expresa los principios generales de ley con respecto al punto relatado que regían en dicha fecha y se hallaba vigente cuando la corte celebró la vista, así como al dictar la sentencia.

En 29 de septiembre de 1904, la Corte de Distrito, dictó sentencia á favor del demandante, por la suma de ($500) quinientos dollars; pero ignorando absolutamente su súplica con referencia á la cerca del ferrocarril, etc. En vista de la ley, tal como la entendemos en el presente caso, creemos que la corte estuvo justificada al ignorar esta parte de la demanda del actor, y al conocer, de este caso, solamente como uno establecido para recobrar indemnización por daños y perjuicios que ocasionaron muerte.

Al establecer su apelación el abogado del demandante, trata de limitarla á la acción tomada por la corte inferior al concederle únicamente ($500) quinientos dollars, de modo que esta corte no investigue su causa de acción, sino solamente la cantidad concedida por daños y perjuicios; en otras palabras, presentar su apelación de modo que esta Corte, ó confirme la sentencia, ó aumente la suma recobrada por daños y perjuicios. Esto no puede hacerse. Cuando se establece una apelación, es contra el fallo de una corte sentenciadora. Código de En-

juiciamiento Civil, sección 294. Cuando el asunto ha sido presentado á esta Corte, puede ser examinado en todas sus partes, pues esta Corte está autorizada para considerar todos los méritos del mismo, á fin de impartir la justicia y el derecho, y evitar la injusticia y la demora. Leyes de 1903, p. 59. Entonces, debemos considerar que esta apelación presenta todo el asunto ante nosotros, para considerarlo en sus distintos aspectos de acuerdo con la ley aplicable á los hechos que en el mismo se relacionan.

En primer lugar, debemos conocer la situación en que se encontraba el interfecto con respecto á la compañía demandada, y cuales eran los derechos y obligaciones existentes entre ambos. Si el cruce hubiera estado en un camino público, y se hubiera encontrado el interfecto de viaje por el camino, de una manera legal, los derechos del viajero y los de la compañía del ferrocarril, hubieran sido iguales y recíprocos; pero por cuanto el tren se encontraba necesariamente limitado á su vía, y uno que vaya á pié, puede gobernar sus movimientos de una manera tal, que evite un choque, más ligeramente que puede hacerlo el maquinista con tal objeto, la obligación se impone al que vá á pié, para dejar el camino y tomar precauciones razonadas para su propia defensa. *Morrissey* v. *Eastern R. R. Co.* (126 Mass. 377). 30 Am. Rep. 687.

Pero cuando el que marcha á pié va por la vía del ferrocarril, ó atraviesa la misma por un cruce particular, sin tener permiso del amo del terreno, ó de la compañía de ferrocarril, entonces dicha persona es un infractor de la ley, y únicamente tiene derecho á tal cuidado de parte de los empleados de la compañía del ferrocarril, á fin de impedir la imprudencia, y se evite causar perjuicio voluntariamente. El que traspase la vía del ferrocarril, debe tomar extraordinarias precauciones para su propia guardia, y á no ser por descuido ó negli-

gencia de parte de los empleados de la compañía de fe-
rrocarril, ni la persona perjudicada, ni sus herederos,
si la muerte proviene, pueden entablar una acción con-
tra la compañía de ferrocarril para recobrar daños y
perjuicios ocasionados por el choque.

Ill. Cent. R.R. Co. v. Godfrey (71 Ill. 500) 22 Am. Rep. 114.
Severy v. Nickerson; (120 Mass. 306) 21 Am. Rep. 514.
St. L. V. & T. H. R. R. Co. v. Bell (81 Ill. 76) 25 Am. Rep. 269.
McAlpin v. Powell; (70 N. Y. 126) 26 Am. Rep. 555.
Gramlich v. Wurst; (86 Penn St. 74) 27 Am. Rep. 684.

El caso presentado ante nuestra consideración se pa-
rece bastante á uno de Nueva York, del que se hará un
pequeño extracto. En aquél caso, el demandante abin-
testato, fué cogido y muerto por los carros del deman-
dado, cuando él cruzaba por la vía; no en un cruce pú-
blico, pero en uno donde las personas tenían la costum-
bre de transitar sin que nadie se lo prohibiera. Se sos-
tuvo que no podía entablarse una acción bajo tales fun-
damentos. La Corte de apelaciones de Nueva York, ex-
poniendo sus razones, en su hábil dictamen, dijo por
conducto del Juez E. Darwin Smith, lo que sigue:

"No existía relación alguna entre el demandado y Nicholson para
que hubiera un deber particular tal como el que existe entre un amo
y su sirviente ó entre el principal y su empleado. La demanda
alegaba que el referido James Nicholson se hallaba viajando por
un camino público legalmente y atravesando la vía del demandado.
Si los hechos hubieran sido así, el demandado y Nicholson hubieran
tenido iguales razones y hubieran tenido los mismo derechos en el
referido camino, y el demandado le hubiera debido una verdadera
obligación legal; pero el caso me parece estar desprovisto del pri-
mer elemento para crear una obligación legal de parte de los de-
mandados para colocar y asegurar sus carros con respecto á los
derechos del referido Nicholson. El no era un empleado de los
demandados ni tampoco se encontraba trabajando en la compañía
de hierro. No tenía ninguna razón para encontrarse en la vía;
ni tampoco derecho para usarla ó cruzarla y hubiera sido senci-
llamente excusado para traspasarla mediante una licencia, lo que

podía suponerse de haberla usado anteriormente sin habérsele presentado inconveniente. Nicholson v. Erie Ry. 41 N. Y. 525. También relatado en 30 American Reports, p. 687, en su nota.

Aunque el demandante, cuando ocurrió el suceso, fuese simplemente un intruso y transgresor de la línea de ferrocarril, ni que entrara en ella por algún móvil, invitación ó permiso, y no siendo él ni un pasagero, ni persona que estuviera en vías de serlo, sino que se encontraba allí para sus propios fines, y usaba de la vía en su propio beneficio, la compañía de ferrocarril no tiene obligación para con él, excepto la obligación negativa de que sus empleados que trabajan en sus trenes, no estropearán á una persona maliciosamente ó por un gran descuido ó negligencia. (*Jackson* contra *Boston & Maine R. R. Co.*, 125 Mass. 75. También relatado en la nota que se encuentra en 30 American Reports, p. 687.

Parece que existe la creencia entre la gente de la costa del norte, que la vía del ferrocarril es un camino público, y que todo el mundo tiene derecho á andar por ella, ó correr á caballo por la misma cuando le plazca, y algunas veces, los que van á pie dudan con respecto á si ellos deben dejar el camino á la locomotora ó nó. Ya es tiempo de que en esta Isla se sepa, como en el continente, que el uso de una vía de ferrocarril está reservado solamente á la compañía de ferrocarril y al propietario del suelo, con exclusión de los demás, excepto cuando está cruzada por un camino público. Esta regla es necesaria, no ya para la protección de la propiedad, sino para la conservación de la vida. El público debiera saber que, en esta isla, lo mismo que en todas partes, es contrario á la ley y es una ofensa castigada por la ley, el andar por la vía del ferrocarril, lo mismo que si fuera un camino público. Y aún si no lo fuera, sería un mal civil de naturaleza grave, pues tal hábito perjudica no solo al transgresor, sino á todos los que viajan como pasajeros y á los empleados del tren.

La compañía del ferrocarril ha comprado á sus propietarios del terreno, el derecho exclusivo á usar el mismo, así como el terreno en que se encuentra tendida la línea, y ha pagado á sus amos la suma que ambos convinieron para que la compañía tuviera tal privilegio, y por tal razón, nadie tiene derecho á intervenir con él. Estas concesiones hechas á las compañías de ferrocarriles, se llevan á cabo teniendo en cuenta la comodidad y la conveniencia del público. El derecho de camino de la compañía del ferrocarril, es obtenido por la compañía del ferrocarril, con exclusión de todas las personas, excepto el amo del terreno. Cuando la compañía no hace uso de ese derecho para el tránsito de sus trenes, ó para cualquiera otro uso á que pueda destinarlo la compañía, pertenece entonces al propietario del terreno para su uso y ocupación, y cualquier persona que entre en la vía del ferrocarril, debe hacerlo ya por permiso ó licencia de la compañía, ó del propietario del terreno. Cuando tal persona no tiene ninguno de dichos permisos, es meramente un transgresor y únicamente tiene derecho á la consideración que la ley exige se le tenga á todos los seres humanos, ya que vaya en el desempeño de sus negocios ó no. *Phil. & Red. R. R. Co.* contra *Hummell* (44 Penn St. 375) 84 Am. Dec. 458. Los principios legales con respecto á transgresores que usen la vía del ferrocarril, se encuentran bien referidos en un dictamen de la Corte Suprema de Illinois. El Juez Sheldon, al discutir este punto, dice:

"El derecho de camino era la propiedad exclusiva de la Compañía, en donde ninguna persona sin autorización tenía derecho á estar, para ningún fin. El demandante viajaba por el camino al cual tenía derecho el demandado, no para ningún fin en relación con la compañía de ferrocarril, sino por su propia conveniencia, por una vereda que conducía á su casa, después de haber venido de ver su vaca. No había nada que le eximiera de haber hecho mal y de ser un infractor de la ley, sino solamente que él suponía

que la compañía lo permitía, lo que deducía de que la compañía nunca había intervenido cuando la gente viajaba por allí.

Pero, porque la compañía no creyó conveniente ejercer sus derechos echando la gente fuera de su terreno, no por ésto se había adquirido derecho alguno sobre su terreno. No estaba obligada á proteger ó á suministrar para asegurar á las personas que de este modo usasen su vía para su propia conveniencia. El sitio era de peligro, y tales personas fueron allí á su propio riesgo y gozaban de la supuesta licencia sujetas desde luego á los peligros consiguientes. A lo sumo, no hubo más que un simple consentimiento para su uso. Una mera licencia ó permiso para entrar ó pasar por una finca, no creará un deber ó impondrá una obligación de parte del amo para que suministre lo necesario á fin de evitar accidentes. *Sweeney* contra *Old Colony and Newport Ry. Co.*, 10 Allen. 373; *Hickey* contra *Boston & Lowell Ry. Co.*, 14 id. 429; *Phil. & R. R. Co.*, contra *Hummell*, 44 Penn. St. 375; *Gills* contra *The Penn. Ry. Co.*, 59 id. 129.'' (*Illinois Central R. R. Co.* contra *Godfrey*, 22 Am. Rep. 114.)

Sin embargo, no es defensa de parte de la Compañía de ferrocarril, que se haya mostrado que ha tenido culpa, el hecho de que el demandante ó interfecto era un transgresor al tiempo de ocasionársele el daño, si no fué él negligente cuando tal daño se infirió. El hecho de ser un transgresor no le priva de la protección de la ley; y si el demandado no tiene el debido cuidado al conducir el tren que causó el daño, tiene derecho á indemnización por los daños y perjuicios que haya sufrido.

Una persona ébria que se encuentre acostada en la vía del ferrocarril, es un transgresor y es culpable de negligencia contributoria, lo cual le quitaría el derecho á pedir indemnización por daños y perjuicios que le cause un tren que pase, á menos que los empleados de la compañía, después de haberlo visto, se pruebe que no hayan tenido bastante cuidado ó hayan tratado de evitar causarle daño.

*Hening* contra *Wilmington & Raleigh R. R. Co.* (10 Iredel 402) 51 Am. Dec. 395.

Y si no se pone todo el cuidado necesario para evitar

causar lesión á una persona que se encuentre acostada en la vía, ya voluntariamente ó de otro modo, la persona perjudicada puede exigir que se le indemnice.

. (Véase el caso de *Freer* contra *Cannon,* 55 Am. Dec. y casos citados en la nota de la página 674.)

Tal es la corriente general de autoridades, aunque hay casos en los que se ha sostenido que no puede haber indemnización, cuando se cause una lesión á una persona ébria que se encuentre en la vía, aunque los empleados de la compañía son culpables de negligencia. *Houston y T. C. R. R. Co.,* contra *Symphins* (54 Tex. 615) 38 Am. Rep. 632.

También se ha dicho, que cuando un pasajero ha sido perjudicado sin que él haya tenido culpa, la ley presume negligente á la compañía, pues era una parte de su deber el llevar de una manera segura á los pasajeros, y por esta razón las compañías tienen gran responsabilidad cuando ocurren estos casos; pero con el fin de que los pasajeros puedan viajar sin que haya peligro, la ley obliga á la compañía á tener expedita la vía. Si un hombre se coloca en la línea, no debe esperar que la ley haga más por él sino castigar por la lesión que le fuera inferida gratuitamente, y si él ha sido lesionado, como consecuencia del ejercicio legal de la compañía, entonces debe censurarse á sí mismo por su descuido y tontería. *L. S. N. R. & C. Co.* contra *Norton,* 64 Am. Dec. 673.

Se alega por el demandante en este pleito, que era el deber de la compañía del ferrocarril el cercar su vía y tener puertas y centinelas en los cruces de los caminos particulares. Es innecesario discutir ese punto ahora.

Pero aún si este es el caso, y si las reglas con respecto á tales deberes de la compañía de ferrocarril estuvieran en vigor, todavía la falta de cumplir con la ley en este punto, no contribuyó en manera alguna á la muer-

te del interfecto. Las vías de ferrocarriles no se cercan con el objeto de evitar que las personas que andan á pie entren en la misma, ni tampoco se han puesto las barras y puertas con tal fín, y es dudoso que ese sería el efecto si hubieran sido construídas con tal objeto. El interfecto no era un niño, ni lunático, así como tampoco idiota.

Un hombre de edad avanzada, con sentido común y alguna prudencia, no podría pedir que se le encerrara, á fin de evitar que fuera á un sitio donde había peligro; pero su conocimiento del peligro y el instinto de propia conservación, solamente son suficientes para conocer el mal. A fin de que pueda ser una razón para tener derecho á exigir indemnización por daños causados debido á la negligencia de parte de la compañía, debe existir prueba de que tal negligencia ó falta de cumplimiento á sus obligaciones, contribuyó de algún modo á causar la lesión por la cual se ha entablado el pleito. *Gillespie* contra *McGowen,* (100 Penn. St. 144) 45 Am. Rep. 369. *Gramlich* contra *Wurst,* (86 Penn. St. 74) 27 Am. Rep. 685.

(Véase la nota de la página 460 de 84 Am. Dec. y casos allí citados.)

Los hechos de este pleito demuestran que Julián Pérez se encontraba en la vía del ferrocarril en el punto donde ésta se encuentra cruzada á nivel por el camino privado; que no tenía licencia ni permiso del amo del terreno ni de la compañía, y por esta razón debe considerársele como un simple transgresor con derecho solamente á la protección que la ley pueda concederle. Esto es, que los empleados de la compañía del ferrocarril no deben ser considerados culpables de gran descuido ó negligencia, ó de haber causado una lesión gratuita, al llevar corriendo la locomotora cuando se acercaba al sitio donde estaba el hombre.

Es cierto que aparece de la prueba que era sordo,

pero no se ha probado que la compañía demandada ó sus empleados supieran tal cosa, y por esta razón, él debió haber tenido más cuidado para no dejar que le cogiera el tren. Si no oía bien, debió haber hecho uso de sus otros sentidos, pues tuvo bastante tiempo para haberse salido de la vía después de haber sido visto por los empleados del tren que se acercaba en un punto á unos cuarenta metros ó más en que se hallaba el interfecto.

Además, el maquinista tenía motivo para creer que un hombre que en tal situación se encontraba en la vía, se hubiera quitado de la misma antes de que el tren le hubiera alcanzado, lo que hubiera hecho cualquier hombre de alguna prudencia que estimase su vida.

Por cuanto el accidente que causó la muerte de este hombre, que viajaba á pié, fué debido á su propia negligencia y descuido y no se ha probado que los empleados de la compañía hayan sido negligentes ó no hayan tenido el cuidado y la prudencia debidos, el demandante no puede ser indemnizado por daños y perjuicios por la compañía de ferrocarril.

La sentencia en este pleito debe por lo tanto revocarse, y dictarse sentencia en esta causa á favor de la compañía demandada, contra el demandante, por todas las costas, tanto en esta Corte como en la inferior.

*Revocada.*

Jueces concurrentes: Sres. Presidente Quiñones, y Asociados, Hernández y Figueras.

El Juez Asociado Sr. Wolf, no intervino en la resolución de este caso.