DE JESÚS, DEMANDANTE Y APELANTE, v. AYENDE, DEMANDADO
Y APELADO.

APELACIÓN procedente de la Corte de Distrito de San Juan,
Distrito Segundo, en pleito sobre cobro de dinero.

No. 2926.—Resuelto en julio 28, 1923.

DAÑOS Y PERJUICIOS—NEGLIGENCIA—VEHÍCULO DE MOTOR QUE PATINA.—En el
presente caso de daños causados por un automóvil que por haber patinado
produjo lesiones a causa de las cuales falleció la causante de la demandante,
la cual se encontraba a orillas de la carretera, *se resolvió*: que el mero
hecho de patinar un vehículo de motor no es por sí mismo prueba de negli-
gencia, a no ser que se pruebe que el *chauffeur* o conductor fué negligente
al operar la máquina, o que ejecutó algún acto que una persona de ordinaria
prudencia no hubiera ejercitado en las mismas circunstancias.

ID.—NEGLIGENCIA IMPUTADA AL CHAUFFEUR.—Una persona obligada a actuar en
un caso de emergencia no puede considerarse responsable por la falta de
ejercer el mejor juicio que podía resultar de una deliberación, puesto que
esa regla es aplicable con referencia a la persona que actúa y la persona
por cuya falta se ve obligada a actuar sin tener tiempo para pensar.

ID.—NEGLIGENCIA *per se*—CADENAS PARA RUEDAS DE *Trucks*.—La omisión de po-
nerle cadenas a las ruedas de un *truck* que transitaba por una carretera em-
breada y mojada por la lluvia al ocurrir el accidente, no constituye negli-
gencia *per se*.

Los hechos están expresados en la opinión.
Abogado de la apelante: *Sr. E. Campillo.*
Abogado del apelado: *Sr. S. Suau.*

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión del
tribunal.

Esta es una acción sobre daños y perjuicios que reclama
la demandante con motivo de la muerte de su hija, y cau-
sada en virtud de lesiones que recibiera a consecuencia de
un accidente con un *truck* de carga, propiedad del deman-
dado.

La demandante alegó, en síntesis que allá el 27 de octu-
bre de 1921, en la carretera central, en o cerca del kilómetro
17, un *truck* destinado al servicio de carga en general,
guiado por el *chauffeur* Cecilio Pérez, agente y empleado
del demandado, en ocasión de venir con dirección de Caguas
hacia San Juan y a causa de encontrarse mojada la carre-
tera patinó dicho vehículo resbalando la rueda delantera,

la que cayó en la cuneta derecha, y que debido a la negligencia del *chauffeur* dió tal impulso al *truck* que éste al subir la rueda de la cuneta patinó dando una vuelta en redondo, cayendo la rueda trasera en la cuneta izquierda, arrollando y atrapillando una pierna a Santos Aquilina de Jesús, la que le destrozó por completo y la que hubo de amputársele, falleciendo luego dicha de Jesús a causa de los golpes y contusiones que recibió en el accidente; que la finada no dejó descendientes y vivía junto con la demandante, a quien sostenía con el producto de su trabajo, siendo ésta su heredera; y que la demandante con la pérdida de su hija ha sufrido daños que estima razonablemente en la suma de $5,000.

El demandado negó todas las alegaciones de la demanda, y como materia nueva alegó que el accidente que causara la muerte a Santos Aquilina de Jesús fué debido exclusivamente a la actitud pasiva y negligencia contributiva de la interfecta, quien asumiendo el riesgo que corría confió pacientemente en estacionarse en el sitio en que resultó arrollada, cuyo hecho no puede imputarse al empleado del demandado, que actuó observando la leyes de carretera y maniobró con la precaución y diligencia de un buen padre de familia.

Visto el caso y oídas las pruebas, la corte inferior dictó sentencia declarando, que "luego de haber practicado una inspección ocular del sitio en que ocurrió el accidente que ha dado origen a la acción, opina que no se ha demostrado la negligencia del *chauffeur* que guiaba el *truck* del demandado, como causa inmediata del accidente, y que, en tal virtud, debe dictar, y dicta sentencia declarando sin lugar la demanda, sin especial condenación de costas."

Como la corte inferior no estableció por separado sus conclusiones de hecho y razonamientos legales, el apelante sin embargo señala la comisión de los siguientes errores: (*a*) Haberse aceptado la materia nueva opuesta como de-

fensa; (*b*) Declararse probado que el *truck* quedó sin control por la caída del *chauffeur*; (*c*) Haber llegado la corte inferior a la conclusión de que no se demostró la negligencia del *chauffeur* como causa inmediata del accidente.

Bajo estos errores, lo que se apunta realmente es una errónea apreciación de la prueba.

La acción en este caso, se hace descansar en el hecho inicial de la patinada que dió el *truck* perteneciente al demandado, siendo su consecuencia el accidente que causó la muerte de Santos Aquilina de Jesús. La interfecta estaba escampando la lluvia debajo de un árbol de mango, a orillas de la carretera, y a su lado se encontraba Matías Cotto, peón caminero del Departamento del Interior y testigo de la demandante que declaró en el juicio y cuyo testimonio, que consideramos de excepcional importancia, se reproduce en su parte substancial, como sigue:

"¿Conoció a Tita de Jesús? Sí, señor, la conocí allá el día 27 de octubre del 21. ¿La vió? Sí, señor. ¿En alguna oportunidad ese día habló con ella? Estaba pasando un aguacero en el kilómetro 17, hectómetro 4, abajo de un palo de mango. ¿Le sucedió algo a Tita de Jesús? Al estar pasando el aguacero debajo del palo de mango, estaba parada a la derecha y yo estaba sentado en la raíz del palo, al estar así, yo sentado en la raíz, vimos venir un *truck* que venía con dirección hacia Río Piedras, al llegar el *truck* un poco retirado de nosotros, notamos que dió una patinada, la patinada fué rápida y llevó la rueda a la cuneta izquierda, al llegar a la cuneta izquierda dió atrás y venía con dirección a nosotros, yo y Tita; al ir para encima de nosotros, José Santa, gritó 'Matías que te mata ese *truck*,' le dije a ella 'Tita, que nos mata' tiré cuneta abajo, creía que iba detrás de mí y ella por salvar la vida tiró para arriba, llevó una pierna arriba del talud y la otra le quedó atrapillada con el *chassis;* la parte de alante del carro quedando para Caguas y lo que traía para Caguas para San Juan. ¿Qué fué lo que hizo para salvarse? Yo creía que iba atrás de mí, cuando le dije 'Tita, huya que nos mata el carro' yo tiré hacia abajo y creí que iba atrás de mí cuando sentí que dió un golpe el *truck* y sentí un grito de ella y la vi apresada y con la otra pierna trepada en el talud, empuñada del palo. ¿Aquel

día era un día de lluvia? Sí, señor, había llovido bastante. ¿La carretera estaba mojada? Sí, señor, bastante. ¿El *truck* llevaba cadenas en las ruedas? No es *truck* de cadenas. ¿Si traía cadenas sobre las gomas, no llevaba ninguna? No, señor."

Esta declaración quedó corroborada con la del testigo José Santa, presentado asimismo por la demandante y que en la parte que consideramos esencial, dice:

"Cuando salió el *truck* de la cuneta derecha ¿qué hizo? Cuando patinó volteó redondo. ¿En qué posición quedó? Siguió carretera abajo, cuando cogió para abajo yo estaba allí y les dije 'huigan que los mata ese *truck*' a Matías y a la señora ésa. ¿Dónde cayó entonces el *truck*? Frente a donde estaba ella. ¿En la otra cuneta? En la misma en donde estaba ella. ¿En qué posición quedó el *truck*, mirando hacia San Juan o hacia Caguas? Hacia Caguas, lo que venía para acá quedó para allá. ¿Dió una vuelta redonda? Sí, señor. ¿Qué le pasó a Aquilina de Jesús? Cuando Matías huyó por la cuneta ella se agarró por el talud de la cuneta. ¿Qué alto tiene el talud? Tiene como un metro más o menos. ¿Se subió de la cuneta para arriba. Sí, señor. ¿Dónde la cogió el *truck*? La punta del armario del *truck* le cogió esta pierna. ¿A qué distancia de la cuneta la cogió? Como a un metro más o menos. Así es que se subió ella a un metro de distancia? Sí, señor. ¿Ud. dijo que el *chauffeur* se había caído? Se fué para alante y se quedó en el talud, cuando volteó se fué el carro solo. ¿El *chauffeur* se había caído fuera? Sí, señor. ¿Ud. estaba escampando el agua debajo de un palo de mango, a la izquierda de la carretera yendo para Caguas? Sí, señor. ¿Tita de Jesús y el peón caminero estaban frente a Ud. en el otro lado de la carretera? Estaban más abajo, yo estaba aquí. ¿Casi al frente? Sí, señor."

Estos testimonios así relatados, demuestran dos extremos. El primero se relaciona con la situación de la interfecta, y sin que podamos asumir, como lo hace el apelante, que la sentencia de la corte inferior podía estar fundada en la defensa especial que hizo la demandada atribuyendo el accidente a la negligencia contributoria de la interfecta al tratar de salvarse subiendo hacia la parte alta del árbol y no haber seguido el ejemplo de la persona del peón ca-

minero que estaba a su lado.   Esto hubiera sido siempre una pobre defensa, porque en circunstancias de momento cuando de súbito surge un inminente peligro, el instinto de conservación si bien actúa en toda su fuerza, no se le puede exigir aquella clase de discernimiento o discreción cuya omisión pudiera considerarla como negligencia.   La interfecta, sin embargo, tuvo que actuar con la rapidez del pensamiento y lo hizo con la fundada razón de que trepando más arriba del árbol bajo el cual se guarecía se creía fuera del alcance del peligro que le amenazaba y que a pesar de sus esfuerzos le causó la muerte.

El segundo extremo de aquellas declaraciones se refiere a la actuación del *chauffeur* que conducía el *truck* del demandado.   Dos elementos a su vez fueron los que determinaron la conducta de dicho *chauffeur*: uno, que podemos llamar de emergencia, independiente de su voluntad, como lo fué la patinada del *truck* producida por la condición mojada en que estaba el camino; y el otro dependiente más que de su voluntad, de su instinto de conservación.

En cuanto al primero, podemos sentar como regla general que el mero hecho de patinar un vehículo de motor no es por sí mismo prueba de negligencia, a no ser que se pruebe que el *chauffeur* o conductor fué negligente al operar la máquina, o que ejecutó algún acto que una persona de ordinaria prudencia no hubiera ejercitado en las mismas circunstancias, y una y otra cosa fueron circunstancias que apreció la corte inferior y no existe nada en la prueba que demuestre una apreciación errónea de dicha corte en tal sentido.

"El mero hecho de que un carro haya patinado no es por sí solo prueba tal de negligencia que haga al dueño responsable por una lesión resultante de dicha patinada, y el hecho de si el conductor fué negligente en su modo de manejar la máquina, es ordinariamente una cuestión a determinar por el jurado.   En una acción por daños causados por un automóvil que patinó y golpeó

al demandante que estaba parado en la acera, se resolvió que era necesario que de la prueba pudiera concluirse, bien que el *chauffeur* fué negligente en el manejo de la máquina o culpable de algún acto que una persona prudente no hubiera cometido, o de alguna omisión en que ninguna persona prudente hubiera incurrido, en el manejo del vehículo, o que en alguna otra forma el demandado o sus agentes fueron negligentes.'' *Huddy on Automobiles,* pags. 416, 415.

Y con respecto al segundo elemento, diremos que el mismo razonamiento que hicimos para la interfecta, al actuar en instantes de peligro para su propia protección, podemos aplicarlo al *chauffeur* mientras se desarrollaban los incidentes del caso. De este modo tenemos que presumir que cuando él se encontró sin el control del *truck* y arrastrado por fuerzas irresistibles, y viéndose en peligro, él estaba en el propicio momento de reclamar el beneficio del principio verdaderamente humano, que admite de que ''una persona obligada a actuar en un caso de emergencia no puede considerarse responsable por la falta de ejercer el mejor juicio que podía resultar de una deliberación, puesto que esa regla es aplicable con referencia a la persona que actúa y la persona por cuya falta se ve obligada a actuar sin tener tiempo para pensar.''   20 R. C. L. 30.

En lo que concierne a las consecuencias legales que pretende deducir el apelante por atribuir la patinada del *truck* a la falta de uso de cadena, se nos hace necesario citar, como base para nuestras conclusiones, aquella parte de su alegato que dice:

''Es un hecho cierto y sostenido por toda la prueba del demandante y del demandado que en aquellos momentos estaba lloviendo, y era un día de lluvia, y a pesar de tener tal conocimiento el *chauffeur* del demandado no hizo uso de cadenas en las ruedas, las cuales no son para otro fin y objeto que evitar las patinadas de los vehículos.

''Si el día era lluvioso y tenía conocimiento el *chauffeur* de que estando el vehículo descargado era muy fácil la patinada, y con

más razón teniendo conocimiento de que la carretera estaba em-
breada y tener lomo, y por la frecuencia de viajar por ella durante
esos seis años; tales hechos no constituyen disculpa.''

La precedente admisión de los hechos esenciales ocurri-
dos en este caso, simplifica los términos de la discusión,
porque reduce toda cuestión a preguntar si la falta del uso
de cadenas en las ruedas de un *truck* en circunstancias como
las que ocurrieron en el presente caso, constituye negligen-
cia estatutoria o negligencia como materia de prueba.

Por lo menos, no encontramos estatuto en Puerto Rico
que imponga como obligación legal el uso de cadenas a ve-
hículos de motor en casos como el presente. Parece que,
en general, ha sido corriente usarlas en automóviles para
casos de emergencia, y como ilustración de esto, cuando se
camina por sitios peligrosos y el piso está mojado o como
ocurre en países fríos en que la nieve permanece durante
parte del invierno cubriendo los caminos, pero no aparece
que se haya seguido la misma costumbre tratándose de
vehículos más pesados como los *trucks,* y por el contrario,
la tendencia que parece prevalecer es la prohibición de per-
mitir el uso de cadenas en los mismos. En el Estado de
New York, por ejemplo, no hay disposición que obligue a
llevar cadenas a los *trucks,* y más bien se le ha dado au-
torización expresa al comisionado de carreteras para prohi-
bir el uso de las mismas. Artículo 24, Highway Law, Mc-
Kinney's Consolidated Laws, Book 24. La razón de la ley
parece que se funda en que los *trucks* son vehículos de pe-
sado tonelaje y el uso de cadenas en sus ruedas imprimiría
sus huellas en el pavimento de las carreteras produciendo
daños que causarían su destrucción. Se desprende pues de
la ley y los hechos·que no puede imputársele al *chauffeur*
una omisión que ni siquiera exige la costumbre, tratándose,
por tanto, de un caso de emergencia o accidente desgra-
ciado, en donde el *chauffeur* estuvo privado ·de poder ejer-

cer el control de su habilidad y facultades para evitar un acto del que de otro modo hubiera sido responsable.

· El apelante, no obstante, parece darle una gran impor· tancia al hecho de si el *chauffeur* una vez que el *truck* patinó y chocó contra la cuneta de si se tiró o se cayó del *truck,* pero esto no vemos que pueda ejercer influencia alguna a los efectos de fijar su responsabilidad. Dadas las circunstancias del accidente, el *chauffeur* corrió peligro si se cayó del *truck,* o de otro modo, si decidió tirarse actuó entonces el instinto de conservación. Para mejor ilustración de una situación semejante, creemos pertinente citar el siguiente comentario:

"Se infiere de lo dicho que cualquier cosa que produce el efecto de privar a una persona de poder ejercitar sus facultades intelectuales y guiar sus actos por ellas le eximirá de una imputación de negligencia que de no ser así podría surgir de su conducta. Las emergencias o peligros súbitos sirven de aclaración a esta proposición. La regla judicialmente expresada es que una persona que en una situación de súbita emergencia procede de acuerdo con su mejor juicio, o quien debido a la falta de tiempo para poder formar un juicio deja de proceder en la forma más juiciosa no puede imputársele negligencia. De conformidad con esto se resolvió que el dueño de un *restaurant* no era responsable por el acto de su empleado al tratar de quitar una lámpara encendida. El caso fué que el empleado descubrió una lámpara de gasolina encendida y peligrosa y cogiéndola trató de llevársela. Al hacer esto su traje cogió fuego. Entonces él tiró la lámpara cuando explotó ocasionando grave daño al demandante. * * * Semejante acto realizado en circunstancias tan críticas no ha de ser considerado por las reglas que son aplicables generalmente a los actos ejecutados a sangre fría dando tiempo y oportunidad a la persona para poder considerar las consecuencias de la clase de acto que va a realizar. Las decisiones de esta y otras cortes son muy numerosas en la aplicación del principio a casos en los cuales personas que asumen repentinamente una posición de peligro y de inminente daño hacen cosas que ordinariamente serían actos de negligencia." 20 R. C. L. 29–30.

Por último, cuando como en este caso aparece además

que se practicó una inspección ocular del lugar del suceso, y no se ha presentado ante esta corte ningún otro medio que pueda ponerla en las mismas condiciones de la corte inferior, hay que presumir que el juez inferior dictó una sentencia justa y en armonía con la ley.

Por las razones expuestas la sentencia de la corte inferior debe confirmarse.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf y Aldrey.

Los Jueces Sres. Presidente del Toro y Asociado Hutchison disintieron.