CELESTINO VILLARÁN, demandante y apelante, *v.* LOÍZA SUGAR COMPANY, demandada y apelada.

No. 4696.—*Sometido:* Noviembre 18, 1930. *Resuelto:* Mayo 31, 1932.

*E. López Tizol,* abogado del apelante; *Jaime Sifre Jr., Diego O. Marrero* y *Horacio Franceschi,* abogados de la apelada.

Por la Corte.

SENTENCIA

POR CUANTO los cuatro miembros del Tribunal que intervienen en la decisión de este caso estiman que procede la confirmación de la sentencia apelada;

POR CUANTO en este caso el Juez Asociado Sr. Wolf ha

emitido una opinión con la cual está conforme el Juez Asociado Sr. Aldrey;

Por cuanto los Jueces Presidente Sr. del Toro y Asociado Sr. Hutchison están conformes por los motivos que se expresarán en opinión u opiniones que archivarán oportunamente;

Por tanto, se declara sin lugar el recurso y se confirma la sentencia apelada que dictó la Corte de Distrito de San Juan con fecha 10 de enero de 1928.

Lo acordó el tribunal y firma el Sr. Juez Presidente, haciéndose constar que el Juez Asociado Sr. Córdova Dávila no intervino.

Sumarios de la opinión emitida por el Juez Asociado Señor Wolf, con la cual está conforme el Juez Asociado Señor Aldrey.

606

Se trata de una acción de daños y perjuicios en que la demanda alegó actos específicos de negligencia por parte de la demandada porque un tren conducido por ella lo fué a excesiva velocidad, con vagones en frente de la locomotora, y porque la vía estaba en malas condiciones por varios motivos, ocasionándose el descarrilamiento del tren. Ante una moción de *nonsuit* la corte resolvió, en efecto, que el deman-

dante había dejado de probar motivo alguno de negligencia, diciendo específicamente que no se había demostrado que el tren fuese conducido a mayor velocidad o que la vía estuviera en malas condiciones, y que no se había demostrado deber alguno de la demandada para con el demandante.

El 27 de marzo de 1930 este Tribunal confirmó la sentencia de la Corte de Distrito de San Juan. 40 D.P.R. 741. El demandante radicó una moción de reconsideración que declaramos con lugar más o menos sobre la teoría de que podría ser aplicable la doctrina de *res ipsa loquitur*.

Los autos no revelan en forma alguna que se suscitara la doctrina de *res ipsa loquitur* en la corte inferior. Al terminar el demandante de practicar su prueba, la demandada presentó una moción de *nonsuit*. De la exposición del caso y pliego de excepciones aparece que el demandante se opuso a la moción, toda vez que la corte tenía ante sí las admisiones de la demandada y un principio de prueba. El demandante continuó alegando que la corte podía pesar una y otra y determinar por las admisiones y prueba si había o no una causa de acción. La exposición del caso no demuestra que el demandante indicara a la corte cuáles fueran estas admisiones. La corte, posteriormente, dijo que la cuestión principal en que se descansaba era el párrafo octavo de la demanda que leía:

"Que, según información, en dicho día y hora, el expresado tren al pasar por el sitio, Loíza, Puerto Rico, conocido por el nombre de 'Desvío Pabón,' debido a la culpa y negligencia única de la demandada y sus empleados, se descarrilaron dos o tres vagones del mismo a causa de que el dicho tren era conducido a mucha velocidad al pasar por sobre aquel sitio, en donde existía un desvío, llevaba vagones delante de la máquina, las vías se encontraban en mal estado, montadas sobre unos tablones de maderas sueltas y sin contener las debidas grapas o clavos que sujetaran los railes de dichas viguerías, la aguja de cambio se encontraba floja, y estaba recia para ser manejada para dar y cerrar el paso a las vías por donde habían de pasar los trenes; habiéndose en dicho accidente volcado dos o tres de los vagones entre los cuales se cuenta el en que iban dicho menor

y demás acompañantes, cayéndose el predicho menor Carmelo debajo de uno de ellos, recibiendo golpes y contusiones de tal naturaleza que falleció casi instantáneamente.''

La corte procedió a discutir los actos específicos de negligencia alegados en la demanda y resolvió que el demandante había dejado de probar acto alguno de negligencia.

Conforme hemos dicho, nada hay en los autos que revele cuáles fueron las admisiones en que se descansó o que el demandante estuviera invocando la doctrina de *res ipsa loquitur*.

■ Estamos muy lejos de aseverar que no se pueda descansar en la doctrina de *res ipsa loquitur* sin hacerse una alegación específica a ese efecto. Lo que sí resolvemos es que en un juicio en que el demandante se funda en actos específicos de negligencia y el demandado comparece a la corte preparado para defenderse contra estos actos específicos de negligencia, el demandante en justicia debe dar algún paso para demostrar que él no se basa exclusivamente en las alegaciones específicas de negligencia, sino en la doctrina de *res ipsa loquitur*. Esta es una aplicación de la regla general del derecho adjetivo de que un demandado debe ser notificado y oído.

Si no hubiese habido opinión de la corte que demostrara que el juez tan sólo estaba discutiendo actos específicos de negligencia o si la opinión revelara una discusión por parte de la corte de la doctrina de *res ipsa loquitur,* podríamos asumir sin riesgo que el demandante presentó su teoría a la corte. Empero, como la ley exige que el juez de la Corte de Distrito exponga los motivos en que funda su decisión, y él tan sólo discutió la negligencia específica, existe la presunción, si no la certeza, de que la cuestión de *res ipsa loquitur* nunca fué presentada a la Corte de Distrito de San Juan. Asumamos, sin embargo, que dicha doctrina fué invocada en la corte inferior.

■■ Existe una fuerte corriente de autoridades al efecto de que no obstante haberse hecho alegaciones especí-

ficas de negligencia contra el demandado, el demandante aun puede descansar en la doctrina de *res ipsa loquitur*. Pueden hallarse numerosas autoridades en sentido contrario. Asumiremos que el demandante tenía derecho a suscitar la cuestión de *res ipsa loquitur* y diferiremos para un caso más propicio la regla a adoptarse en esta jurisdicción. El artículo 1217 del Código Civil provee:

Las presunciones no son admisibles sino cuando el hecho de que han de deducirse esté completamente acreditado."

Por tanto, incumbía al demandante, si descansaba en la doctrina de *res ipsa loquitur,* demostrar los hechos preliminares que le hubiesen colocado en situación de invocar la doctrina. El caso más fuerte y más típico para la aplicación de ella es cuando la persona muerta o lesionada va como pasajero en un tren perteneciente a un porteador público y ocurre un accidente. Por consiguiente, si se descansa en el descarrilamiento del tren, el demandante debe demostrar que él era debidamente un pasajero y que la demandada era en realidad un porteador en el sentido público en que se usa esa palabra. Es claro que si una persona sólo transporta su propia mercadería dentro de su propiedad, o dentro de la propiedad bajo su dominio, no es un porteador.

No hubo alegación o prueba de que la demandada fuera un porteador público. Por el contrario, la alegación específica del quinto párrafo de la demanda fué que la Loíza Sugar Co. era dueña de un tren movido por vapor que hacía viajes entre Carolina y más allá de Río Grande, acercándose a Mameyes y a otros sitios con varios otros ramales. Esta no es la alegación de que la demandada es un porteador público de pasajeros, ni siquiera de carga, o que su tren tenga relación alguna con el público.

Los párrafos citados de la demanda y otras partes de la misma demuestran que el tren pertenecía a la demandada y existe la presunción de que el mismo discurría sobre propiedad perteneciente a la demandada o bajo su con-

trol. Si había alguna duda respecto a si el tren pasaba por caminos públicos o si era un porteador público, el peso de probarlo recaía sobre el demandante. En la interpretación de alegaciones, cualquier hecho que no ha sido alegado en forma alguna, debe considerarse en contra de la parte que alega, máxime si no hay evidencia tendente a demostrar ese hecho.

■ Este no es un caso que está desprovisto de prueba. Celestino Villarán, demandante en este caso y padre del niño que pereció en el accidente, ocupó la silla testifical. Declaró específicamente respecto a algunos, si no respecto a todos, los actos de negligencia alegados en la demanda. Demostró estar enteramente familiarizado con el sitio donde ocurrió el accidente. Manifestó que el accidente tuvo lugar en un desvío. Aparece necesariamente que el desvío era un ramal de la línea principal que el testigo manifestó partía de la central de la demandada y llegaba hasta las últimas cañas que tiene la compañía. Dijo además que el accidente tuvo lugar al llegar al desvío y que había una curva a la que entraban los vagones para buscar la caña perteneciente a la central y que la curva tenía a veces una dirección y a veces otra. Hubo bastante prueba, alguna de ella vaga, al efecto de que la línea principal de la demandada se dirigía a la central misma y tenía varios ramales que llegaban hasta las últimas cañas que estaban bajo el dominio de la demandada. La inferencia que necesariamente hay que hacer de todo este testimonio es que el tren era usado por la demandada con el objeto de transportar la caña.

Toda la prueba tendió a excluir la idea de que la demandada fuera un porteador corriente de pasajeros.

El mero uso de la palabra "tren" no demuestra que la demandada sea un porteador público. Ella puede utilizar tal tren, como frecuentemente sucede en Puerto Rico, exclusivamente para el transporte de sus productos agrícolas. La palabra "tren" estaba originalmente limitada en Puerto Rico

casi exclusivamente a vehículos públicos, mas sabemos que es un hecho, y creemos que de ello podemos tomar conocimiento judicial, que en Puerto Rico una gran parte de las centrales, si no todas ellas, operan sus propios trenes para el transporte de sus cañas de azúcar.

Igualmente tampoco se alegó o probó que el hijo del demandante tuviera derecho a estar en el tren, o que surgió cualquier deber, nexo o relación contractual entre la demandada y el hijo del demandante, salvo evitar lesionarle proterva y maliciosamente. Desde luego, no estamos discutiendo los casos en que un demandante está en un sitio público y es golpeado por un objeto que cae, o cualesquiera otros actos en que el demandado está en mejor posición que el demandante para explicar el suceso, pues si en este caso en algo ha de invocarse la doctrina, la indemnización debe fundarse en la teoría de que la demandada era un porteador de pasajeros. Por el momento no estamos considerando los casos en que la invitación a montar o algo similar surge del demandado. En el presente caso el demandante no probó ningún hecho o serie de hechos que impusieran a la demandada el deber de explicar el accidente.

Toda la cuestión está más o menos cubierta por 45 C. J. 1208, sección 776, como sigue:

"De acuerdo con el criterio prevaleciente, si no unánime, la aplicación de la regla *res ipsa loquitur* no se limita a casos que comprendan el incumplimiento del deber de ejercer cuidado proveniente de una obligación contractual, sino que se aplica a casos que emanan de actos torticeros en que las partes no tienen relación particular entre sí y en que la parte que lesiona estaba obligada a ejercer cuidado ordinario solamente. Sin embargo, originalmente se consideraba que la aplicación de la doctrina estaba limitada, por lo menos bajo esa interpretación de la doctrina que permitía que se infiriera la negligencia del mero hecho de haber ocurrido un accidente o lesión, a casos en que existía relación contractual entre las partes, como en el caso de un porteador público o depositario, y en que el deman-

dado tenía para con el demandante un deber absoluto u obligación semejantes a los de un asegurador. Sin embargo, aunque se dice que la regla se aplica más frecuentemente a casos que envuelven las relaciones especiales mencionadas, que a otros casos de negligencia, se ha resuelto que no hay base en las autoridades o en la lógica para la regla, ya que la presunción se origina y depende de la naturaleza del acto y de las circunstancias y carácter del acaecimiento, y no de la naturaleza de las relaciones entre las partes, excepto indirectamente en tanto en cuanto esa relación define la medida del deber impuesto al demandado.''

■ No hubo prueba, según surge ordinariamente cuando se aplica la doctrina, de que el hijo del demandante se hallara en un sitio en que tenía derecho a estar. La contestación de la demandada negó enfáticamente que el hijo del demandante tuviera derecho a estar en el tren, e insistió en que él era un intruso que había penetrado en el tren contra la voluntad expresa de la compañía y alegó que el tren no se dedicaba a la transportación de pasajeros sino que era un ferrocarril privado para la transportación de cañas de azúcar y materiales en conexión con los negocios de la central. Naturalmente, en una moción de *nonsuit* ninguna de las alegaciones de la contestación puede estimarse probada, pero puede considerarse la contestación para demostrar las cuestiones litigiosas. A virtud de las mismas, el demandante, si la doctrina era invocable, estaba obligado a demostrar que su hijo se hallaba en un sitio donde tenía derecho a estar.

Si el demandante hubiese demostrado que su hijo había sido invitado a montar en el tren o que a los familiares de los empleados de la demandada, con el consentimiento de la compañía, se les había permitido montar en el tren, se habría presentado un caso distinto.

Al discutirse la moción de *nonsuit* la Corte de Distrito de San Juan dijo que no se le había demostrado que la demandada y sus empleados fueran negligentes por el mero hecho de que se descarrilaran los vagones y de que ocurriera la muerte del hijo del demandante. Esta corte en apelación

repitió lo dicho por la corte inferior. Esta manifestación aparece publicada en el sumario del caso, como sigue:

"Cuando ocurre el descarrilamiento de un tren y se prueba que dicho tren era manejado por empleados de la demandada, dentro de la esfera de sus funciones, y que descarriló en la misma vía propia de la demandada, ello no es base por sí solo para que se infiera o presuma la negligencia de la demandada (*res ipsa loquitur*)."

· Este sumario está propenso a ser mal entendido a menos que sea explicado. Si un tren es un porteador de pasajeros y se descarrila, cualquier pasajero puede invocar la doctrina de *res ipsa loquitur*. No obstante, antes de que pueda invocar tal doctrina debe demostrar que era un pasajero, o lo que para nuestros fines equivale a lo mismo, que el demandado es un porteador de pasajeros. Como hay trenes, especialmente en Puerto Rico, que no son porteadores de pasajeros, sino claramente privados, el mero descarrilamiento de un tren no es razón para invocar la doctrina. El sumario hubiera debido decir: "Cuando no se demuestra que el demandado es un porteador de pasajeros, el mero descarrilamiento de un tren de su pertenencia no constituye prueba de negligencia, etc.," o algo a ese efecto. Si se toma la palabra "tren" en el sentido más general usado hoy en día, el mero descarrilamiento no es prueba de negligencia.

Si un vagón se sale de la vía y nadie sufre daño alguno, no surge cuestión alguna de negligencia en el sentido jurídico. Para que se use la palabra "negligencia" debe surgir una obligación y desde luego un obligado. Un demandante debe demostrar que el demandado tenía un deber para con él.

Quizá basta decir que ni la demanda ni la prueba tendió a demostrar negligencia de parte de la demandada, pero es el caso que las partes en sus alegatos discutieron la aplicabilidad de la doctrina de *res ipsa loquitur,* y, por consiguiente, la hemos discutido bajo las posibilidades de este caso.

*Debe confirmarse la sentencia.*