Isabel Rodríguez Cruz, demandante y apelante, *v.* White Star Bus Line, Inc., demandada y apelada.

Núm. 7494.—*Sometido:* Abril 1, 1938.  *Resuelto:* Febrero 15, 1939.

*F. Prieto Azúar,* abogado de la apelante; *C. Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelada.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

Se alega en la demanda en este caso que el día 5 de enero de 1933 la demandante viajaba de San Juan a Santurce como pasajera, mediante el pago de la tarifa correspondiente, en la guagua P–13, propiedad de la corporación demandada; que mientras la guagua caminaba por la calle San Justo y al doblar por la calle Power, paró bruscamente y le patinaron las ruedas posteriores, yendo a chocar con un poste de la luz eléctrica; que como resultado del choque la demandada fué lanzada contra otro asiento, recibiendo contusiones que le obligaron a recluirse en cama en una clínica y luego en su casa, por espacio de un mes; que el vehículo era conducido por el chófer David Camerón Martínez, empleado de la demandada y en funciones de su empleo; y que el accidente se debió a la negligencia de la demandada y su empleado.

En las especificaciones sometidas por la demandante se alegó que la negligencia imputada a la demandada consistió en que siendo el sitio por donde caminaba la guagua una pendiente que estaba mojada por haber llovido, el chófer bajó por esa pendiente a una velocidad exagerada y en el momento en que la guagua doblaba para coger la calle Power el chófer la paró bruscamente, lo que hizo que las ruedas traseras patinaran y que la guagua chocara con un poste.

Se reclamaron daños y perjuicios en la suma de $2,000 por las contusiones recibidas, gastos, pérdida de beneficios de trabajo, sufrimientos morales y físicos y angustias mentales.

Alegó la demandada que su empleado había actuado con la debida diligencia; que el patinazo no pudo ser evitado a pesar de las precauciones tomadas por el empleado; y que

el accidente fué uno de carácter casual, desgraciado e inevitable.

La Corte de Distrito de San Juan declaró probado que la causa del accidente fué el haber patinado el vehículo al montarse las ruedas traseras sobre la vía, que sobresalía de los adoquines y estaba mojada a consecuencia de la lluvia, y que el chófer no bajó la calle a velocidad exagerada y no paró bruscamente tampoco. Por estos fundamentos declaró sin lugar la demanda.

La demandante apeló, señalando los siguientes errores:

Que la corte inferior erró al resolver que no era aplicable al presente caso la doctrina de *res ipsa loquitur,* intimando que para ello debió la demandante y apelante abandonar su teoría de imputaciones específicas de negligencia y negando así a dicha parte las presunciones e inferencias que emanan de dicha doctrina a su favor.

La parte pertinente de la resolución de la corte inferior dice así:

" . . . La demandante manifiesta en su alegato que no se basa exclusivamente en la teoría de negligencia, si que también descansa en la doctrina de *res ipsa loquitur,* o sea que la 'cosa habla por sí.'

"De acuerdo con el artículo 108 de la Ley de Evidencia (art. 470 Cód. Enj. Civ.,: ed. 1933) la parte que sostiene la afirmativa en la cuestión deberá presentar la evidencia para probarla. A los efectos de la aplicación de la regla *res ipsa loquitur,* a la demandante le hubiera bastado probar prima facie los hechos preliminares que le colocaban en situación de invocar la doctrina, o sea que era un pasajero de la guagua de servicio público de la demandada y que ocurrió un accidente, siendo ella allí y entonces lesionada, no obstante las alegaciones específicas de negligencia. *Villarán* v. *Loíza Sugar Co.,* 43 D.P.R. 604. (Opinión de los jueces Sres. Wolf y Aldrey.) Y entonces la demandada hubiera estado obligada a controvertir la presunción en que descansaba la demandante, demostrando que no medió negligencia alguna de su parte. Art. 100, Ley de Evidencia, *Kay* v. *Metropolitan Street Railway Co.,* 163 N.Y. 447, 57 N.E. 751, 8 Negligence Rep. 98. Sin embargo, como la demandante introdujo además la evidencia de que disponía para demostrar los actos específicos de negligencia alegados, no abandonando esta teoría, y la de-

mandada practicó también su evidencia en contrario, toca a la corte resolver si las alegaciones de la demanda han sido probadas, ya que la evidencia siempre debe corresponder a las alegaciones."

Sostiene la apelante que la corte inferior quiso decir que consideraba únicamente la prueba sobre negligencia, sin tomar en cuenta la doctrina de *res ipsa loquitur* toda vez que en la demanda se hicieron alegaciones específicas sobre negligencia. Para fundamentar el error alegado, cita la apelante principalmente el caso de *Villarán* v. *Loíza Sugar Co.,* 43 D.P.R. 604, que dice en su parte pertinente:

"Existe una fuerte corriente de autoridades al efecto de que no obstante haberse hecho alegaciones específicas de negligencia contra el demandado, el demandante aún puede descansar en la doctrina de *res ipsa loquitur*. Pueden hallarse numerosas autoridades en sentido contrario. Asumiremos que el demandante tenía derecho a suscitar la cuestión de *res ipsa loquitur* y diferiremos para un caso más propicio la regla a adoptarse en esta jurisdicción."

Para sostener que la regla prevaleciente en California es que no obstante haberse alegado actos específicos de negligencia, puede el demandante invocar la doctrina de *res ipsa loquitur,* cita la apelante el caso de *Seney* v. *Pickwick Stages Northern Division,* 255 P. 279, en el que se resolvió:

" . . . Es regla general bien sentada que el hecho de volcarse un vehículo operado por un porteador público levanta una inferencia de negligencia bajo la doctrina de *res ipsa loquitur*. (Citas.) La doctrina es aplicable aun en el caso en que la demanda contenga alegaciones específicas o generales de negligencia. *Roberts* v. *Sierra Ry. Co.,* 14 Cal. App. 180, 111 P. 519, 527. La alegación y prueba de actos específicos de negligencia no privarían al demandante del beneficio de la doctrina de *res ipsa loquitur* en cuanto se refiere a esos actos específicos de negligencia."

La parte apelante parece entender que la corte inferior estaba obligada a declarar con lugar la demanda por tratarse de un caso en que la doctrina de *res ipsa loquitur* era aplicable. A nuestro juicio la citada doctrina autoriza pero no obliga al tribunal a deducir que hubo negligencia de la

simple relación de las circunstancias bajo las cuales ocurrió el accidente. El récord del caso no sostiene la contención de la apelante de que la corte inferior ignoró o se negó a aplicar la doctrina de *res ipsa loquitur*. En su resolución el juez meramente expresa que a los efectos de la aplicación de la regla hubiera sido suficiente probar la relación de porteador y pasajero, la ocurrencia del accidente y las lesiones de la demandante, no obstante las alegaciones específicas de negligencia; y que toda vez que la demandante presentó además evidencia sobre los actos específicos de negligencia alegados, sin abandonar la teoría en cuestión, y que la demandada también practicó su evidencia en contrario, era deber de la corte resolver si las alegaciones de la demanda habían sido probadas y si la demandante tenía la preponderancia de la evidencia necesaria para justificar un fallo a su favor. Esta resolución está sostenida por la del Tribunal Supremo de los Estados Unidos en el caso de *Sweeney* v. *Erving,* 228 U. S. 233, donde se dice:

"En nuestra opinión, *res ipsa loquitur* significa que los hechos de la ocurrencia autorizan la inferencia de negligencia, pero no obligan a hacer tal inferencia; que esos hechos ofrecen prueba circunstancial de negligencia cuando no exista prueba directa de ella, pero es evidencia que debe ser pesada y no que deba ser necesariamente aceptada como suficiente; que esos hechos piden explicación o que se les controvierta, no necesariamente que lo requieran, y que ellos presentan un caso que debe ser decidido por el jurado, no que den derecho absoluto a un veredicto. *Res ipsa loquitur,* cuando es aplicable, no convierte la negación general del demandado en una defensa afirmativa. Cuando toda la evidencia ha sido presentada, la cuestión para el jurado es si la preponderancia de la prueba está a favor del demandante."

De la opinión en el caso de *Heidt* v. *People's Motorbus Co.,* 284 S. W. 840, copiamos lo que sigue:

"El demandante era un pasajero, el demandado un porteador público mediante paga, y el demandante, al probar la ocurrencia insólita de una sacudida extraordinaria y no usual del carro, estableció un caso prima facie que le daba derecho a invocar la regla de *res*

*ipsa loquitur.* Pero el demandante no se limitó a presentar un caso prima facie. Fué más allá y probó que el automóvil patinó y chocó con la acera y retrocedió y que el patinazo del automóvil fué la causa del choque con la acera. Es cierto que el demandante no puede ser privado de su derecho a invocar la regla de *res ipsa loquitur* por la prueba de actos específicos de negligencia. *Price* v. *Railway*, 220 Mo. 435, 119 S. W. 932, 132 Am. St. Rep. 588. Pero en este caso el demandante probó exacta y específicamente qué fué lo que motivó el accidente. Ahora bien, el mero hecho de patinar un automóvil no es necesariamente negligencia, . . .

"El demandante no solamente presentó un caso prima facie, sino que lo destruyó mientras lo hacía, probando cuál había sido el acto específico que había causado el accidente, y no hay nada en la evidencia ofrecida por el demandado que pueda ayudar al demandante a revivir el caso prima facie que él mismo destruyó."

No se cometió el primer error señalado.

■ Se alega como segundo error que la corte inferior concluyó que la causa del accidente fué la patinada del vehículo cuando ésta sólo fué una consecuencia de la causa próxima del mismo, o sea la negligencia y descuido del conductor del vehículo. La parte pertinente de la resolución lee así:

"La causa del accidente fué el haber patinado el vehículo, al montarse las ruedas traseras sobre los railes de la vía que estaban mojados, y haber en ese sitio una pequeña inclinación de norte a sur, o sea en la misma dirección en que se encuentran los railes, y por sobresalir parte de éstos de los adoquines. El *chauffeur* no bajó la calle San Justo a velocidad exagerada, ni deslizándose por sobre los railes, ni paró el vehículo bruscamente al doblar hacia la calle Power."

Más adelante repite de nuevo:

"La evidencia claramente establece que la causa del accidente fué la patinada. No medió en el mismo acción u omisión alguna por parte de la demandada o de su empleado. Es regla general establecida, que el mero hecho de patinar un vehículo de motor no es por sí solo prueba de negligencia, a no ser que se demuestre que el *chauffeur* o conductor fué descuidado al operar la máquina o que ejecutara algún acto que una persona de ordinaria prudencia no hubiera

realizado en las mismas circunstancias. *De Jesús* v. *Allende,* 32 D. P.R. 439, 443–44; véanse además *Linden* v. *Miller,* 172 Wis. 20, 177 N. W. 909; *Ortwein* v. *Droste,* 228 S. W. 1028; *Hennekes* v. *Beetz,* 217 S. W. 533.''

En el caso de *Linden* v. *Miller,* supra, se resolvió:

'' . . . Una patinada puede ocurrir sin culpa, y cuando así ocurre puede igualmente continuar sin culpa por una distancia y un tiempo considerables. Significa la pérdida parcial o completa del control del carro, bajo circunstancias que no implican necesariamente negligencia. De lo que resulta que la contención del demandante de que la doctrina de *res ipsa loquitur* es aplicable a la situación presente no está bien fundada. Para que la doctrina de *res ipsa loquitur* sea aplicable, habría que sostener que la patinada por sí sola implica negligencia. Y eso no es así. Es un hecho físico bien conocido que los carros pueden patinar sobre caminos grasientos o resbalosos, sin culpa, ya sea por causa de la manera de manejar el carro o por razón de encontrarse el carro en tal sitio . . . Como regla en los choques de automóviles, la causa directa del accidente y las circunstancias predominantes que concurren al mismo no están generalmente bajo el control del que guía el carro, para que pueda surgir una presunción de negligencia por su parte. En otras palabras, la doctrina de *res ipsa loquitur* no es aplicable usualmente a tales accidentes.''

La corte inferior llegó a sus conclusiones, supra, después de considerar y pesar toda la evidencia aducida por una y otra parte. La evidencia es contradictoria en extremo. Los testigos de la demandante y ésta declararon que la guagua iba a gran velocidad y que no patinó, a pesar de que en su demanda jurada (párrafo 4) la demandante alegó que ''dicha guagua que caminaba a una velocidad exagerada, paró bruscamente y le patinaron las ruedas posteriores, yendo a chocar con un poste, etc.''; y los testigos de la demandada sostuvieron que la guagua iba a velocidad moderada y patinó al montar las ruedas sobre los railes mojados. El tribunal resolvió el conflicto dando crédito a los testigos de la demandada y no a los de la demandante. Y no habiéndose alegado ni resultando del estudio que hemos hecho del récord

que el juez sentenciador actuara movido por pasión, prejuicio o parcialidad o que cometiera error manifiesto en la apreciación de la prueba, la que a nuestro juicio es suficiente para sostener la sentencia recurrida, es nuestro deber desestimar el segundo error.

Como tercer error señala la demandante y apelante el hecho que la corte sentenciadora infirió que hubo cuidado y diligencia por parte del conductor, de los hechos expuestos por el testigo J. M. Pérez.

Pérez declaró que vió la guagua bajar por la calle San Justo; que había llovido y estaba el pavimento húmedo; que al doblar el vehículo por la calle Power patinó, resbalando la parte trasera y dando la parte derecha de la caja con un poste; que como la curva es cerrada y hay railes del trolley, el chófer tuvo que reducir la velocidad; que el vehículo iba a poca velocidad, acaso diez millas, habiendo reducido la que originalmente traía al bajar; que patinó cuando las ruedas traseras montaron en los railes; que no se puede tomar la curva sin cruzar éstos; que el chófer aplicó los frenos porque además de reducir la velocidad prendía automáticamente el farol del aviso (*stop light*).

Alega la apelante que dicha declaración imputa negligencia y descuido por parte del conductor, y cita en su apoyo el caso de *Tennessee Coach Co.* v. *Young,* 80 S. W. (2d) 107, que dice: "Era el deber del conductor de la guagua conducirla a una velocidad tal que le permitiera parar sin patinar, tomando en consideración el camino resbaladizo, la poca visibilidad a causa de la lluvia, la neblina, etc." Pero no copió la apelante el resto de la opinión, que reza: "Debemos aceptar aquella interpretación del testimonio que sea más favorable al demandante, o sea la de que él estaba conduciéndola a una velocidad entre 35 y 50 millas por hora en un camino que él sabía estaba mojado y resbaloso."

El presente error se refiere a la apreciación de la evidencia que hizo la corte inferior. No es posible sostener que

la declaración del policía Pérez impute negligencia y descuido al conductor.

Se imputa en el cuarto error el hecho de dar crédito al testigo de la demandada y apelada Severo Aybar, porque desde donde se hallaba situado no podía presenciar el accidente y porque su testimonio fué contradicho y desmentido por el policía J. M. Pérez. Se refiere también a la apreciación de la prueba y credibilidad del testigo por la corte inferior, alegándose que la corte estaba prevenida en favor del testigo, que era su subalterno, o sea submárshal.

Asume la apelante que como el testigo se estaba bajando de su automóvil y tenía un pie en el estribo, necesariamente se hallaba de espaldas al sitio donde ocurrió el accidente. Pero éste dice claramente que el accidente fué frente a él y lo describe, y la opinión de la corte fué que el testigo vió el accidente y que su declaración era digna de crédito.

La única alegada contradicción entre este testimonio y el del policía Pérez se refiere a aquella parte de la declaración en que éste dice no haber visto a Severo Aybar en la guagua después del accidente. Aun cuando aceptáramos que el hecho de que Pérez no viese a Aybar constituye una contradicción, ella no sería bastante para obligarnos a resolver que la corte inferior erró al dar crédito a la declaración de Aybar.

El quinto señalamiento de error se basa en que la corte inferior, al sostener en su opinión que los porteadores no son aseguradores absolutos de sus pasajeros, describió el cuidado a que vienen éstos obligados como ''un alto grado de cuidado,'' en vez de decir ''más alto'' (*utmost, highest*) grado de cuidado. Dijo la corte:

'' . . . Es regla general establecida, que el mero hecho de patinar un vehículo de motor no es por sí solo prueba de negligencia, a no ser que se demuestre que el *chauffeur* o conductor fué descuidado al operar la máquina o que ejecutara algún acto que una persona de ordinaria prudencia no hubiera realizado en las mismas circunstancias. *De Jesús* v. *Allende*, 32 D.P.R. 439, 443, 444 (y otras citas). Y la circunstancia de que la demandante fuera un pasajero no cam-

bia la regla. *Pues los porteadores públicos, si bien deben observar un alto grado de cuidado para con sus pasajeros,* no son aseguradores de éstos, y son responsables cuando por acción u omisión causan el daño, interviniendo culpa o negligencia. Art. 1803 Cód. Civ.; 4 Blashfield Cyc. Automobile Law & Pr. 13, ed. 1935; 10 C. J. 867.'' (Bastardillas nuestras.)

En apoyo de su contención cita la apelante la fraseología usada en distintas opiniones:

''También se ha dicho, que cuando un pasajero ha sido perjudicado sin que él haya tenido culpa, la ley presume negligente a la compañía, pues era una parte de su deber el llevar *de una manera segura* a los pasajeros, y por esta razón las compañías tienen *gran responsabilidad* cuando ocurren estos casos; . . .'' (Bastardillas nuestras.) *Pérez v. American Railroad Co. of P. R.,* 9 D.P.R. 218, 228.

''Un conductor de una guagua es un porteador público obligado a ejercer el mayor cuidado y diligencia para la seguridad de sus pasajeros.'' *Simmons v. Pac. Electric Ry. Co.,* 212 P. 637.

El señalamiento se funda únicamente en una cuestión de fraseología. La siguiente cita de 4 R.C.L. 1144, es aplicable al caso:

''GRADO DE CUIDADO REQUERIDO DEL PORTEADOR.—REGLA GENERAL. —El grado de cuidado que debe observar un porteador para la seguridad de sus pasajeros y para que sea exonerado de responsabilidad por lesiones, es una cuestión de derecho, y la regla generalmente aceptada en cuanto a este punto es al efecto de que los porteadores de pasajeros están obligados a ejercer el más alto grado de cuidado, vigilancia y precaución. . . La regla en cuanto al grado de cuidado que se requiere de los porteadores de pasajeros ha sido expresada en varias formas, empleando algunas cortes la expresión 'el más alto,' otras 'el mayor' y todavía otras 'extraordinario'. La diferencia entre estas expresiones, sin embargo, es simplemente en cuanto a la elección de palabras, y no denota conflicto de opiniones.''

En *Conroy v. Chicago, etc. R. Co.,* 70 N. W. 486, la corte dice: ''A una compañía ferroviaria se le exige solamente el ejercicio de cuidado ordinario y prudencia para con sus pasajeros.'' En *West Memphis Packet Co. v. White,* 41 S. W.

583, se refiere a tal cuidado como "el más alto grado de vigilancia y diligencia." En *Topeka City R. Co.* v. *Higgs,* 16 P. 667, como "el mayor cuidado y cautela"; en *Kane* v. *Cicero & P. Electric R. Co.,* 100 Ill. App. 181, como "el mayor grado de cuidado"; en *Philadelphia City Pass. R. Co.,* v. *Hassard,* 75 Pa. 367, como "cuidado y diligencia razonables"; en *Maggioli* v. *St. Louis Transit Co.,* 83 S. W. 1026, como "muy alto grado de cuidado y diligencia"; en *Spellman* v. *Lincoln Rapid Transit Co.,* 55 N. W. 270, como "el ejercicio de cuidado extraordinario"; etc. Y en 10 C. J. 867: "El conductor de un automóvil o de un vehículo de motor que lleve pasajeros está obligado a usar por lo menos cuidado razonable y ordinario para la protección de sus pasajeros al conducir la máquina."

■ Por el sexto error se queja la apelante de que contrario a lo dispuesto en el artículo 464 del Código de Enjuiciamiento Civil, ed. 1933, la corte *a quo* no dió acogida a la presunción de derecho de que el testimonio de Victoria Calderón fué voluntariamente suprimido por la demandada y apelada y le era, por tanto, adverso.

Estamos de acuerdo con la apelada en que la declaración de dicha Victoria Calderón hubiera sido prueba acumulativa no sólo en cuanto a la forma en que ocurrió el accidente sino también en cuanto a que las dos únicas mujeres que en la guagua viajaban al tiempo del accidente lo eran la demandante y la aludida Victoria Calderón.

La distinción que del caso de *El Pueblo* v. *Saldaña,* 40 D.P.R. 580, hace la parte apelante con relación a este extremo, nos parece muy sutil y, por tanto, de poco efecto para la resolución de este señalamiento. De todos modos, la cuestión sometida no pasa de ser una sobre credibilidad de testigos o apreciación de la prueba, que en el caso de autos no causaría la revocación de la sentencia. El sexto señalamiento debe, por consiguiente, desestimarse.

■ Se refiere el último error asignado a la apreciación de la prueba que hiciera la corte inferior resolviendo a favor

de la demandada el conflicto de evidencia porque, según la apelante, la teoría de la demandante quedó establecida con la propia prueba de la demandada.

No obstante las alegadas contradicciones que señala la apelante en su extenso alegato, las que seguramente tomó en consideración el juzgador, opinamos que es enteramente lógica la conclusión a que llegó la corte inferior, o sea que la causa próxima del accidente fué el haber patinado el vehículo y que no medió acción u omisión alguna por parte del conductor, pues según se declaró probado, éste no condujo el vehículo a velocidad exagerada, ni se deslizó por los railes, ni paró bruscamente.

Cierto es que hubo una patinada, pero este hecho por sí solo no es prueba de negligencia. Como se dijo en *Heidt* v. *People's Motorbus Co.*, supra:

"Ahora bien, la mera patinada de un automóvil no es necesariamente negligente, ni se presumirá la negligencia por la mera patinada sin algún hecho o circunstancia relacionado con ella. La patinada de un automóvil o guagua mientras es conducida por una calle húmeda a una velocidad de ocho o diez millas por hora puede ocurrir con el más cuidadoso conductor, y por lo tanto no puede presumirse que hubo negligencia."

En *Peters* v. *United Electric Rys. Co.*, 165 A. 773:

"El hecho de que un vehículo de motor patine en un camino resbaladizo no es evidencia por sí solo de que el vehículo fuera negligentemente manejado, ni requiere tal hecho de la patinada que se aplique la doctrina de *res ipsa loquitur*. Está universalmente reconocido que un vehículo de motor puede empezar a patinar y ponerse fuera del control de su conductor, aun cuando con anterioridad a la patinada haya sido conducido con el debido cuidado."

*Por las razones expuestas y porque convenimos con la corte inferior en que se trata de un caso de accidente inevitable, opinamos que la sentencia recurrida debe ser confirmada.*

El Juez Asociado Sr. De Jesús no intervino.