Luisa Pillot, demandante y apelada, *v.* White Star Bus Line, Inc., demandada y apelante.

Núm. 8312.—*Sometido:* Junio 28, 1941. *Resuelto:* Julio 15, 1941.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes*, abogados de la apelante; *Ciro Malatrasi, Jr.*, y *Víctor M. Marchán*, abogados de la apelada.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

La parte apelada solicita la desestimación del recurso interpuesto en este caso, por frívolo. Señalada la vista de la moción para junio 23, sólo compareció la apelada por su abogado. La apelante radicó su oposición por escrito. Se concedieron a la apelada cinco días para expresar también por escrito los fundamentos de su petición. Así lo hizo en efecto, archivando su memorándum, notificado a la parte contraria, en junio 27 último.

Se trata de una reclamación sobre daños y perjuicios. La demandada negó general y específicamente los hechos de la demanda y como defensas especiales alegó que la demanda no aducía hchos suficientes para determinar una buena causa de acción, que el accidente tuvo por causa próxima directa la negligencia de la demandante, que dicho accidente se debió a la negligencia contribuyente de la demandante y que en él no medió negligencia alguna por parte de la demandada.

Fué el pleito a juicio y la corte lo resolvió por sentencia de noviembre 14, 1940, declarando la demanda con lugar y condenando a la demandada a pagar a la demandante seiscientos cincuenta dólares y las costas.

En su relación de hechos y opinión, apreció la prueba como sigue:

"La prueba practicada por las partes demostró, fuera de toda duda, lo siguiente: que el día 15 de agosto de 1939 la demandante abordó, en el Hipódromo Las Monjas, en calidad de pasajera y mediante el pago de su pasaje en el momento de tomarlo, uno de los vehículos de motor propiedad de la demandada, conocidos general-

mente por el nombre de 'guaguas', el que era conducido y manipulado por un *chauffeur* empleado de la demandada llamado Guillermo Blandín, para trasladarse desde dicho hipódromo a la parada 22½ de Santurce, P. R., que antes de llegar a dicha parada, la demandante tocó el timbre para avisar al conductor del referido vehículo su propósito de quedarse en la misma, y que éste empezó a reducir la velocidad del vehículo hasta que lo detuvo en dicha parada, y que en los momentos en que la demandante descendía del mismo y estando parada en el estribo, el conductor de dicha guagua echó a caminar la misma súbitamente y sin esperar que la demandante terminase de bajar, lanzando a ésta al pavimento; que como consecuencia de dicha caída la demandante sufrió la fractura del brazo izquierdo y una herida lacerada en la pierna izquierda, siendo asistida primero en el Hospital Municipal y luego tratada por espacio de tres meses en la Clínica Pereira Leal de Río Piedras; que ha quedado con alguna atrofia de la muñeca y no puede hacer el puño, que antes del accidente la demandante trabajaba como lavandera y planchadora y ganaba $15 mensuales, y ahora no puede lavar, aunque sí planchar.

"No nos merecen crédito alguno los testigos de la demandada en cuanto a sus declaraciones con relación a la forma en que ocurrió el accidente.

"Declararon que la demandante tocó el timbre de la guagua e inmediatamente y sin esperar que ésta se detuviese se lanzó a la calle estando la guagua en movimiento. Es absurdo creer que una mujer como la demandante, cuyas facultades, según los propios testigos de la demandada, eran completamente normales, fuera, después de haber anunciado al conductor de la guagua su propósito de quedarse en determinado sitio, a levantarse de su asiento e inmediatamente, sin que el vehículo se hubiese detenido, a lanzarse a la calle. Dichos testigos no han podido llevar a nuestro ánimo aquella certeza moral que lleva siempre al ánimo del juzgador aquellos testigos que nos merecen entero crédito.

"Llegamos a la conclusión de que las cosas no ocurrieron como declaran los testigos de la demandada, sí en la forma que dicen la demandante y sus testigos, o sea, que al acercarse la guagua a la parada 22½ de Santurce, la demandante tocó el timbre; que al oír el mismo el chauffeur redujo la velocidad y paró dicha guagua y, al ver que el pasajero Martín Pérez, testigo de la demandante, descendió de la misma, reanudó su marcha sin darse cuenta de que en ese momento descendía de la referida guagua la demandante.

"Al chauffeur no le preocupaba cuántos eran los pasajeros que descendían de la guagua para ver si los mismos pagaban su pasaje

antes de bajar, ya que todos habían pagado el importe de su pasaje al abordar la misma en el hipódromo, y por esta razón no se dió cuenta de que con una señal de parada eran dos los pasajeros que iban a descender del vehículo.''

Y concluyó:

''La demandada es una corporación dedicada al servicio público y al transporte de pasajeros mediante paga, y su obligación de transportar pasajeros cuidadosamente incluye el deber de tomar todas las precauciones necesarias para la seguridad de dichos pasajeros al descender de sus vehículos, y si falta a este deber es culpable de negligencia. Ya ha sido resuelto en esta jurisdicción que el conductor de una gugua dedicada al transporte de pasajeros está en la obligación de ejercitar un cuidado más de lo ordinario para la seguridad de sus pasajeros. *Polo* v. *White Star Bus Line, Inc.,* 54 D.P.R. 243; *Rodríguez* v. *White Star Bus Line, Inc.,* 54 D.P.R. 310.

''Es una teoría bien conocida, que cuando un porteador público se detiene a dejar un pasajero está obligado a esperar el tiempo necesario para que el mismo descienda o se baje del vehículo en el cual ha sido transportado, y que si mientras dicho pasajero está descendiendo a la calle se reanuda la marcha y le ocurre algo al mismo, dicho porteador ha sido negligente.''

Cita entonces varias autoridades, refiriéndose especialmente al caso de *Washington & Georgetown R. Co.* v. *Harmon's Administrator,* 147 U. S. 571, 583, en los siguientes términos:

''La Corte Suprema de los Estados Unidos de América, sosteniendo el derecho que tiene un pasajero de asumir que un tranvía eléctrico no ha de continuar su marcha después que ha parado para que dicho pasajero descienda del mismo, en el caso de *Washington & Georgetown R. Co.* v. *Leon Tobriner,* 37 L. ed. 284, se expresó así:

'' 'The duty resting upon the defendant was to deliver its passenger, and that involved the duty of observing whether he had actually alighted before the car was started again. If the conductor failed to attend to that duty, and did not give the passenger time enough to get off before the car started, it was necessarily this neglect of duty that did the mischief. It was not a duty due to a person solely because he was in danger of being hurt, but a duty owed to

a person whom the defendant had undertaken to deliver, and who was entitled to be delivered safely by being allowed to alight without danger.' ''

Sólo está envuelta, pues, en la apelación una cuestión de apreciación de prueba contradictoria, pudiendo únicamente revocarse la sentencia recurrida en el caso de error manifiesto o de pasión, prejuicio o parcialidad por parte del tribunal sentenciador.

Es cierto que en su moción de desestimación la parte apelada no expuso en detalle los motivos de la frivolidad, pero lo hizo en forma oral en el acto de la vista y luego cuidadosamente en el memorándum que presentara con permiso de la corte. Ese memorándum fué notificado a la parte contraria que tuvo la oportunidad de contestarlo y no lo ha hecho. Dicha parte radicó los autos en mayo 20, 1941, y no archivó su alegato en el tiempo reglamentario. En mayo 29 pidió una prórroga de treinta días que le fué concedida y en junio 28 siguiente cuando de haber archivado su alegato, hubiera tenido la oportunidad no sólo de argumentar la totalidad de su caso si que de que el alegato sirviera de contestación al memorándum presentado en apoyo de la moción de desestimación ya sometida, lo que hizo fué pedir otra prórroga de treinta días que le fué concedida sin perjuicio de la moción de desestimación.

No deben usarse las mociones de frivolidad para sustituir las vistas regulares en el fondo, pero cuando se observa que el recurso es meramente dilatorio y que la sentencia habrá de ser confirmada necesariamente, entonces proceden, aunque su resolución envuelva los méritos del caso.

"En una moción de frivolidad", se dijo en *Matos* v. *Sucn. Gómez de Agüero,* 43 D.P.R. 930, "puede entrarse en el estudio y consideración de los errores señalados y en el fondo del asunto y desestimarse el recurso cuando aparentemente fondo y errores resultan frívolos."

Hemos estudiado los autos archivados por la propia demandada apelante a la luz del memorándum de la parte ape-

lada y estamos convencidos de que las excepciones tomadas por la demandada en el juicio carecen de mérito y de que la apreciación de la prueba por parte de la corte sentenciadora no podrá ser alterada. La cuantía de la indemnización si de algo peca es de reducida—se reclamaron dos mil quinientos dólares con costas y quinientos dólares para honorarios de abogado y se concedieron seiscientos cincuenta dólares con las costas solamente, no obstante haberse declarado probado que como consecuencia de la caída la demandante sufrió la fractura del brazo izquierdo y una herida lacerada en la pierna izquierda, siendo asistida primero en el hospital municipal y luego tratada por espacio de tres meses en la Clínica Pereira Leal de Río Piedras.

Una vez que se advierte a virtud de una moción al efecto que un caso es así, no debe permitirse que continúe por más tiempo en el calendario de la corte, tanto más cuanto que como en esta ocasión dada la proximidad del cierre de la actual sesión del tribunal y el buen número de casos que están ya en condiciones de ser señalados para el próximo término de noviembre, probablemente la dilación habría de ser por espacio de medio año.

*Se declara con lugar la moción y, en su consecuencia, se desestima, por frívolo, el recurso, quedando confirmada la sentencia recurrida.*